## ·THE EUREKA.

(District Court, N. D. California, First Division. November 7, 1913.)

### No. 15,438.

MARITIME LIENS (§ 25*)—LIEN FOR SUPPLIES—FEDERAL STATUTE.

    Under Act June 23, 1910, c. 373, 36 Stat. 604 (U. S. Comp. St. Supp. 1911, p. 1191), which gives a lien for repairs or supplies furnished to a vessel on the order of the owner or a person authorized by him, but provides that it shall not be construed to confer a lien when the furnisher of the repairs or supplies knew, or by the exercise of reasonable diligence could have ascertained, that the person ordering the same was without authority to bind the vessel, one furnishing supplies on the order of the president of a company in possession of a vessel under an option to purchase, which expressly provided that no liens should be incurred thereon, is not entitled to a lien where he was told that the vessel had not been paid for, and knew the owner, whose place of business was in the same city, and for which he had furnished supplies to the vessel for many years, and made no inquiry as to the contract.

    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 31–36; Dec. Dig. § 25.*]

In Admiralty. Suit by the W. S. Ray Manufacturing Company against the steamer Eureka; the North Pacific Steamship Company, claimant. Decree for respondent.

Ira S. Lillick, of San Francisco, Cal., for libelant.
Chas. H. Sooy, of San Francisco, Cal., for respondent.

DOOLING, District Judge. The steamer Eureka is now and for years has been owned by claimant, North Pacific Steamship Company. From June 10 to August 1, 1912, she was run by the South Coast Steamship Company under an option to purchase from the claimant. This option was in writing and provided that the South Coast Steamship Company should have possession of the vessel, and might use her, but should not incur any lien upon her, nor make any purchases on her account. While she was so in possession of the South Coast Company, Capt. Woodside, the president and manager of the company, purchased from libelant, for the use of the steamer, the articles in suit, including, among other things, a life boat, a life raft, and a

bread tank, saying that he had bought the boat, but had not wholly paid for her, but was to pay for her in installments. The articles were put on board the vessel, and there remain at the present time.

Libelant had for years furnished supplies to the Eureka for claimant, and knew that claimant was her owner at least up to the time that Capt. Woodside said that he had bought her. The home port of the vessel is San Francisco, where libelant's place of business is situated, and where, too, is located the place of business of claimant, as well as of the South Coast Company. For years libelant had transacted business with claimant in furnishing supplies for the Eureka, and could have ascertained without difficulty, simply by telephoning to claimant's office, just what the arrangement was under which the South Coast Company had obtained possession of her. This was not done, but the articles were furnished upon the assurance of Capt. Woodside that his company had bought the vessel, in conjunction with the fact that such company was actually running her. The bills were first sent to the South Coast Company. This company did not exercise its option to purchase, but returned the vessel to claimant with the articles on board. This is a libel against the vessel for their purchase price.

The act of June 23, 1910 (36 Stat. 604, c. 373 [U. S. Comp. St. Supp. 1911, p. 1191]), provides that any person furnishing repairs or supplies to a vessel upon the order of the owner of such vessel, or of a person by him authorized, shall have a maritime lien on the vessel, and need not allege or prove that credit was given to the vessel. Section 2 provides that any person to whom the management of the vessel at the port of supply is intrusted shall be presumed to have authority from the owner to procure such repairs or supplies, and section 3 provides that an owner pro hac vice, or an agreed purchaser in possession of the vessel, may appoint the persons mentioned in section 2, so as to create the presumption of authority therein mentioned, but also provides that nothing in the act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the agreement for sale of the vessel the person ordering the repairs or supplies was without authority to bind the vessel therefor. The act upon which libelant relies defeats his right to a lien.

If Capt. Woodside falls within the class mentioned in section 2, as one intrusted with the management of the vessel at the port of supply by the owner pro hac vice, or by an agreed purchaser in possession, yet by the exercise of the slightest diligence libelant could have ascertained that because of the terms of the agreement for sale of the vessel Capt. Woodside was without authority to bind the vessel for any repairs or supplies.

The remedy of libelant is against the South Coast Steamship Company, and not against the vessel, and the libel must therefore be dismissed.