## THE FRANCIS J. O'HARA, JR.

### (District Court, D. Massachusetts.   August 12, 1915.)

### No. 660.

1. MARITIME LIENS ⬥25—SUPPLIES—MASTER—AUTHORITY TO BIND VESSEL.
    Where a fishing schooner was being sailed on the one-quarter "lay," under which the master and crew, and not the vessel, were required to pay for supplies, the master had no authority in fact to bind the vessel for supplies.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 31–36; Dec. Dig. ⬥25.]

2. MARITIME LIENS ⬥25—STATUTORY LIENS—LAY—LACK OF AUTHORITY—NOTICE.
    Act June 23, 1910, c. 373, § 3, 36 Stat. 605 (U. S. Comp. St. 1913, § 7785), provides that any person furnishing supplies to a vessel shall be entitled to a lien thereon, and that the master shall be presumed to have authority from the owners to secure supplies for the vessel, but that nothing therein shall be construed to create a lien, when the furnisher by the exercise of reasonable diligence could have ascertained that the person ordering the supplies was without authority to bind the vessel therefor. Fishing vessels are customarily sailed on "lays," and several different lays are recognized; the relative obligations of the vessel and of the master and crew under each being well understood in that business. A party furnishing salt on the order of the master of a vessel which was sailing on the one-quarter lay, under which the master and crew, and not the vessel, were required to pay for supplies, was familiar with these different lays, and knew that the vessel in question was being sailed on a lay, but made no inquiry of the master or the managing owners as to the lay under which she was being operated. Though it had previously furnished salt to the vessel when she was on the one-half lay and was liable therefor, and it had been paid for by the owners, this had last occurred more than two years before, and there had been nothing equivalent to a continuous course of dealing, from which authority to buy supplies might be inferred. There was no actual or constructive representation that the vessel was on the half lay or liable for supplies. Held, that such party, knowing that the vessel was on a lay, was bound to inquire whether it was one under which the vessel or the master and crew were to pay for the salt, and by the exercise of reasonable diligence could have ascertained that the master had no authority to bind the vessel, and hence was entitled to no lien.
    [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 31–36; Dec. Dig. ⬥25.]

In Admiralty.   Proceeding by the Union Spar Company against the schooner Francis J. O'Hara, Jr.   On intervening petition of the Gorton-Pew Fisheries Company.   Intervening petition dismissed.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner.

James M. Marshall, of Gloucester, Mass, for claimant.

MORTON, District Judge.   This is an intervening petition, asserting a lien in rem against the fishing schooner Francis J. O'Hara, Jr., to recover payment for salt furnished to that vessel.   The claimant,

O'Hara, is her managing owner. The case is submitted on an agreed statement of facts.

At the time when the salt in question was furnished, the schooner was being sailed on the one-quarter lay, under which the master and crew, and not the vessel, should pay for it. It is customary for fishing vessels to be sailed on "lays." Several different lays are recognized in the fishing business; the relative obligations of the vessel and of the master and crew under each are well understood in that business, and were familiar to the petitioner. After the trip for which the salt in question was furnished had been completed, the catch was sold, and a settlement was made between the owners of the vessel, on the one side, and the master and crew, on the other. The owners took only a proper share for the vessel; they did not reserve anything to pay for the salt here in question; there was no known reason why they should do so.

[1, 2] It is not contended that under the general admiralty law a lien would attach for this salt. The lien claimed arises, if at all, under the act of June 23, 1910 (U. S. Comp. St. 1913, § 7785), which provides in substance that any person furnishing supplies to a vessel shall be entitled to a lien, and that the master shall be presumed to have authority from the owners to secure supplies for the vessel. It further provides (section 3) that nothing in the act shall be construed to create a lien when the furnisher, by the exercise of reasonable diligence, could have ascertained that the person ordering the supplies was without authority to bind the vessel therefor. The salt was ordered by the master of the vessel. He was in fact without authority to bind the vessel therefor. Rich v. Jordan, 164 Mass. 127, 41 N. E. 56.

The real question is whether, upon the agreed facts, the intervening petitioner could, "by the exercise of reasonable diligence," have ascertained the master's lack of authority. The petitioner knew that the vessel was being sailed on a lay; it knew that on some lays the vessel would be liable for the salt, and that on others she would not. It made no inquiry whatever, either from the master or the managing owners, though it might easily have done so, as to what lay she was being operated under, and it had no information on the subject from other sources. It is not stated in the agreed facts that the master, if inquired of, would not have told the truth. On several previous occasions salt had been furnished by the petitioner to the vessel when she was on the one-half lay, and was therefore liable for it, and it had been paid for by the owners. The last time before that here in question was more than two years previous, in May, 1909; and there had not been thereafter anything equivalent to a continuous course of dealing between the vessel and the petitioner, from which authority to buy supplies on her account might be inferred. There was no actual or constructive representation that the vessel was on the half lay or was liable for supplies when this salt was purchased.

The case is not like The City of Milford (D. C.) 199 Fed. 956, where the libelants acted on information which they supposed reliable, and were held to have been justified in so doing, though the information turned out to be false. It is said in the opinion in that case:

"I am persuaded that those witnesses who have testified that he [the president of the company which was the agreed purchaser of the vessel] and the other agents of the company led them [the lienors] to believe that it was the owner of the ship have testified truthfully and accurately." Rose, District Judge, The City of Milford (D. C.) ubi supra, 199 Fed. at 958.

Here the petitioner had no reason to suppose that the vessel was being sailed under a lay which made her liable for supplies, nor that the master had authority to pledge her credit therefor. It furnished the salt without making any effort to find out as to those important facts.

It seems to me that the petitioner, knowing that the vessel was on a lay, was bound to inquire whether that lay was one under which she, or the master and crew, were to pay for the salt. The Eureka (D. C. Cal.) 209 Fed. 373. The slightest inquiry would have disclosed that the master had no authority to buy it on the vessel's account.

I accordingly find that the intervening petitioner could, by the exercise of reasonable diligence, have ascertained that the master was without authority to bind the vessel for the salt in question.

Except as they appear in this opinion, I have not considered those facts contained in the agreed statement, the admissibility of which is in dispute. So far as I have referred to them, I rule that they are admissible.

The intervening petition of the Gorton-Pew Fisheries Company is therefore dismissed.