### THE SOUTH COAST.

(District Court, N. D. California, First Division. June 7, 1916.)

#### No. 15959.

MARITIME LIENS ⚖21—LIENS FOR REPAIRS AND SUPPLIES—EFFECT OF CHARTER.

A charter of a vessel required the charterer to furnish all supplies, to redeliver her free from all liens, and to save the owners harmless from all liens and costs or expenses which they might sustain in consequence of liens. *Held*, that such provisions did not prevent the master appointed by the charterer from creating liens on the vessel for supplies under Act June 23, 1910, c. 373, 36 Stat. 604 (Comp. St. 1913, §§ 7783–7787), nor was notice by the owners to a furnisher effective to prevent the attaching of such liens.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 26; Dec. Dig. ⚖21.]

In Admiralty. Suit by J. C. Rudbach against the steamer South Coast; the South Coast Steamship Company, claimant. Decree for libelant.

Ira S. Lillick, of San Francisco, Cal., for libelant.

Marcel E. Cerf, H. W. Glensor, and Charles H. Sooy, all of San Francisco, Cal., for respondent and claimant.

DOOLING, District Judge. Libelant furnished supplies at various times to the steamer South Coast in the harbor of San Pedro, each time on the order of the person then her master. The vessel was, during this period, being operated by one Levick under a charter from the owners, which charter was also in the nature of a conditional bill of sale, or option to purchase. Libelant, before furnishing any of the supplies in question, was informed that the vessel was under charter to Levick, and had been warned by the owners of the vessel not to have any bills go on the ship's account, and had also been advised that Levick and Oliver would pay the bills. To this he replied that it was immaterial to him who paid the bills, but that he would not sell any

goods to the ship in any other way than by charging them to the ship and her owners, and if they did not want it that way he would not deliver any goods. This was stated by him to one Mills, who first informed him that Levick was operating the ship, and who had been directed by the owners to give him warning not to sell on the credit of the ship. He was also warned by Mr. Sooy, one of the owners, not to deliver any goods on the credit of the ship. So that, if the owners, after the delivery of the ship to the charterers, had any power to prevent the attaching of a lien for supplies by warning the libelant not to furnish such supplies on the credit of the ship, such warning was clearly and definitely given.

The charter in question contains the following provisions:

"Fifth. It is understood that this charter is a charter of the bare vessel, and that the party of the second part [Levick] shall furnish the crew, pay their wages, victual them, furnish all deck and engine room and saloon stores, and supplies of every kind and nature, pay for all fuel, fresh water, port charges, wharfages, customs charges, customs fines, or government fines, pilotages, overtime of crew, agencies, commissions, consular charges, dry-docking, painting of the hull of said vessel, furnishing all lines and slings, and pay all charges whatsoever of every nature, whether of the same kind as hereinabove enumerated or otherwise, that may be incurred in or about the use of said vessel during the term of this charter."

"Tenth. Said party of the second part further covenants * * * that if said payments [charter hire] be not made, then at the option of the first party said vessel will be delivered to the said party of the first part * * * free from all liens and claims of every kind or description whatsoever during the term of this charter party, except the lien for any salvage services that may be rendered to said vessel, and that he, the said party of the second part, will hold and save harmless the said party of the second part from all liens, claims, or demands upon or against the said vessel that may be preferred against the said party of the first part or against the said vessel, and arising or created during the term of this charter party, except any claim for salvage services that may be rendered to said vessel, and further will save said party of the first part harmless from all liens, losses, damages, costs, or expenses that said party of the first part may sustain or be put to in consequence of such liens, claims, or demands, or in respect to any litigation arising out of or in respect thereto or connected therewith."

While these provisions require the charterer to pay all expenses incurred in operating the vessel, they do not deprive him of authority to bind the vessel therefor. Indeed, they seem rather to concede to him such authority by providing that he shall save the owners harmless from all liens against the vessel arising or created during the term of the charter party. The act of June 23, 1910, gives a maritime lien to any person furnishing supplies to a vessel, whether foreign or domestic, upon the order of the owners, which lien may be enforced without alleging or proving that credit was given to the vessel. It also provides that the managing owner, ship's husband, or master, appointed by a charterer, or an agreed purchaser in possession of the vessel, shall be presumed to have authority from the owner to procure such supplies. The only condition upon which such lien may not be created is found in the following words of the act:

"But nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party, agreement for sale of the vessel, or for any other reason, the person ordering the supplies was without authority to bind the vessel therefor."

But by the charter in the instant case the person ordering the supplies—that is to say, the master—was not without authority to bind the vessel therefor. And while the owners took every precaution to warn the furnisher of the supplies not to have any of them go on the ship's account, they did not take the essential and fundamental precaution to provide by the terms of the charter that the charterer, or the master appointed by him, should be without authority to bind the vessel therefor. The case presented here is different from that of The Eureka, 209 Fed. 373, because in that case the option to purchase provided that the holder of the option, though given possession of the vessel, should not incur any lien upon her, nor make any purchases on her account. The present charter contains no such provision, but on the contrary by its very terms contemplates that the charterer should have authority to bind the vessel, and the owners, having executed such a charter and delivered the vessel thereunder, were thereafter without power to prevent the creation of the liens provided for by the act above mentioned; their remedy being against the charterer upon his agreement to hold them harmless from such liens.

A decree will be entered for the amount prayed for.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes