# THE THORDIS.

(District Court, E. D. New York. April 27, 1923.)

**Maritime liens ☞30—Furnisher of repairs on order of known charterer held not entitled to lien.**

Under Ship Mortgage Act June 5, 1920, § 30, subsec. R, a furnisher of repairs to a vessel on the order of one known by him to be the charterer of a character which under the charter party the charterer was required to pay for, is not entitled to a lien, where he made no inquiry and by the exercise of reasonable diligence could have ascertained the terms of the charter party.

In Admiralty. Suit by Michael Vallon and others, doing business as the Hamilton Marine Contracting Company, against the steamship Thordis. Decree for respondent.

William F. Purdy, of New York City, for libelants.

Duncan & Mount, of New York City (Joseph K. Inness, of New York City, of counsel), for claimant.

CAMPBELL, District Judge. This is an action brought in rem by the libelants to recover the value of repairs and supplies claimed to have been furnished by the libelants to the steamship Thordis, between the 17th day of August and the 21st day of August, 1922. The repairs were ordered by Pace Sons & Co., at the time the charterers of the steamship Thordis.

The libelants seek to enforce the lien which they claim was imposed on the vessel by the rendition of such services. Subsections P, Q, and R, of section 30, of the Act of June 5, 1920 (41 Stat. 1005), known as the Ship Mortgage Act, read as follows:

Subsection P: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a

---

person authorized by the owner shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

Subsection Q: "The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."

Subsection R: "The officers and agents of a vessel specified in subsection Q shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

The charter party contained the following provisions:

"(1) That the owner shall provide and pay for all provisions, wages and consular shipping and discharging fees of the captain, officers, engineers, firemen and crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room and other necessary stores, and maintain her class and keep the steamer in a thoroughly efficient state in hull, machinery and equipment for and during the service.

"(2) That the charterers shall provide and pay for all fuel oil except as otherwise agreed, port charges, pilotages, agencies, commissions, consular charges (except those pertaining to the captain, officers or crew), and all other usual expenses except those before stated. * * * Charterers are to provide necessary dunnage and shifting boards, but owners to allow them the use of the dunnage and shifting boards already aboard steamer. Charterers to have the privilege of using shifting boards for dunnage, they making good for any damage thereto."

"(8) * * * Charterers are to load, stow and trim the cargo at their expense. * * *"

From which it appears that repairs of the character alleged in the instant case were to be paid for by the charterers. The charter party did not contain any express provision forbidding the creation of a lien.

The claimant contends: (1) That under the terms of the charter party the libelants have no lien on the ship and must look to the charterers; (2) that, if the libelants had a lien they have waived the same.

As to the first contention, I find that the libelants, before the rendition of the services, were informed that the ship was chartered by Pace Sons & Co. and were put on notice. Even if the libelants were not so informed, lack of knowledge on the part of the libelants would not, however, relieve them from any burden which might be imposed on them by knowledge of the terms of the charter party, as they were not entitled to rest on the presumption that Pace Sons & Co. were the owners of said ship, but should have used reasonable diligence to ascertain whether they were the owners or charterers, and if the latter, the terms of the charter party. U. S. v. Carver, 43 Sup. Ct. 181, 67 L. Ed. —— (January 2, 1923).

The libelants did not before the rendition of the services make any effort to ascertain the provisions of the charter party. Libelants, however, claim that if they had obtained such information, they would still

have had the right to claim a lien against the ship for the repairs made by them, because there was no express provision in said charter party forbidding the creation of a lien for the repairs made, even although it was therein provided that the work should be paid for by the charterers, and cite The South Coast (D. C.) 233 Fed. 327, affirmed 247 Fed. 84, 159 C. C. A. 302, affirmed by United States Supreme Court 251 U. S. 519, 40 Sup. Ct. 233, 64 L. Ed. 386, The Portland (C. C. A.) 273 Fed. 401. I do not think these cases are controlling, because by the terms of the charter party in The South Coast Case it might be inferred that thereby the right to create a lien was given, and because in both of those cases the supplies were ordered by the master, whereas in the instant case the repairs were ordered by the charterers, and libelants were informed that they were charterers before doing the work.

The claimant in support of its contention cites The Kate, 164 U. S. 458, 17 Sup. Ct. 135, 41 L. Ed. 512; The Sylvan Glen (D. C.) 241 Fed. 731; The Millinocket (D. C.) 266 Fed. 392—all of which cases seem to hold that if the libelants at the time knew, or by such diligence as good faith required could have ascertained, that the party upon whose order they were furnished was without authority from the owner to obtain supplies or have repairs made on the credit of the vessel, but had undertaken as between itself and the owner to provide and pay for such supplies and repairs, they could have no lien. In The Millinocket, supra, decided by this court, the question presented in the instant case was decided adversely to the contention of the libelants, and I feel constrained to accept it as binding authority.

Having determined that the libelants did not have a lien, there is no necessity of a finding as to the second claim of the claimant. But in my opinion, if the libelants could have claimed a lien in the instant case, they waived the same by their repeated efforts to collect from the charterers, and the making of no effort to collect from the ship until it appeared that payment would not be made by the charterers.

Judgment is therefore awarded to the claimant, dismissing the libel herein.