## THE BEN LAWERS.

### No. 7214.

District Court, W. D. Washington, S. D.

July, 1930.

Lloyd R. Savage, of Seattle, Wash., for libelant.

Huffer, Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for respondent.

CAVANAH, District Judge.

This is a suit in admiralty, and the libelant has filed a libel in rem against the steamship Ben Lawers for stevedoring services in loading a British vessel on the Puget Sound at Olympia and Everett.

On December 24, 1928, and previous to the arrival of the vessel on Puget Sound, the Pacific Shipping Company, the charterer, entered into a contract with the libelant, whereby the libelant agreed to perform all stevedoring work upon all vessels owned or chartered by the Pacific Shipping Company at all ports on the Sound. The vessel was under charter to the Pacific Shipping Company at the time the work of stevedoring was done, and in and by which the charterer was obligated to load, store, and discharge the cargo at their expense. William Thompson & Co. are the owners of the vessel, who, on January 20, 1929, entered into the charter party with the Pacific Shipping Company, and which was in the possession of the master of the vessel before and during the times she was on Puget Sound, and in the possession of the charterer, and open to inspection by the libelant, who knew that the vessel was under charter to the Pacific Shipping Company, but made no inquiry concerning the terms of the charter or requesting an inspection of it. It will be observed from the charter that the charterer had no authority to bind the vessel for stevedoring services, but under it is obligated to pay for them themselves. No arrangements were made by the owner of the vessel, or its master, and the libelant for the stevedoring services, as all arrangements were made by the charterer.

The statute does not confer a maritime lien on a vessel when the furnisher of the services knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party the one ordering the services was without authority to bind the vessel therefor. 46 USCA § 973. The authorities construing this statute uniformly hold that when a person who

furnishes services or supplies to a vessel knows that the vessel was under charter and does not proceed to ascertain the terms of the charter or the authority of the person with whom he contracts to represent the vessel, the furnisher of the services has no redress against the vessel, unless the charter grants to the charterer authority to impose a lien, but must look to the person who ordered them. The Supreme Court, after referring to the statute, in the case of United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 182, 67 L. Ed. 361, said: "We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty in finding out both." See also United States v. Rapid Coaling & Transfer Co. (C. C. A.) 289 F. 803; The Thordis (D. C.) 290 F. 255; The Susquehanna (D. C.) 3 F.(2d) 1014.

■ Libelant, however, claims that if it had obtained such information it would still have the right to claim a lien against the vessel for the services rendered by it because there was no express provision in the charter to prevent the person ordering the stevedoring services from binding the ship, even though it was therein provided that the work should be paid for by the charterer, and cites cases which it contends establishes the position. The cases cited are not controlling, because by the terms of the charter party the supplies were furnished under conditions different than those existing here, and in some of them the supplies were ordered by the master of the vessel, whereas in the present case the charterer ordered the services to be performed and agreed in the charter to pay for the same, and no right therein is given to impose a lien on the vessel. The Thordis, supra. In the case of Pensacola S. Co. v. U. S. Shipping Board Emergency Fleet Corpora-

tion, 277 F. 889, 891, the Circuit Court of Appeals for the Fifth Circuit considered a provision in a charter party similar to the one in the present case, and said that: "The charter party contained a provision requiring the charterer to provide and pay for coal and other things which were paid for by the appellant. That provision, under the proviso contained in section 3 of the Act of June 23, 1910 (36 Stat. 605; Comp. Stat. § 7785), prevented the furnishing of the coal and other necessaries from having the effect of giving rise to a lien on the ship, or a claim against its owner, therefor, if the furnisher knew, or by the exercise of reasonable diligence could have ascertained, the terms of the charter party." The wording of the provision in the charter party in the case of The Dictator (D. C.) 18 F. (2d) 131, 132, is somewhat similar to the provision under consideration in the present case, as it contains the provision, "The charterers shall pay and provide for all the coal, port charges, pilotages, agencies and commissions," and did not contain a provision prohibiting the right to incur liens. Nevertheless, the court held that the libelant did not have a lien against the ship.

■ Authority must be given to the charterer in the charter party to bind the vessel before one who is dealing with it has a lien on the vessel. If the services are furnished upon the order of the owner of the vessel, or a person authorized by the owner, the statute gives a lien on the vessel, but does not give such lien where the services or supplies are furnished to others, and there is a charter party, which does not grant authority to bind the vessel, and where such authority does not appear in the charter party it becomes the duty of such furnisher to ascertain if the person ordering the services had authority to bind the vessel.

The terms of the charter party here expressly require the charterer, with whom the libelant dealt, to pay for these services, and did not grant authority to it to bind the vessel. The libelant has a right to recover from the Pacific Steamship Company under its contract, but not to a lien on the vessel.

A decree may be entered dismissing the libel, with costs.