## THE DIRIGO FIRST.

### No. 1100.

District Court, D. Massachusetts.

March 29, 1945.

Solomon Rosenberg and Fisher Abramson, both of New Bedford, Mass., for libelant.

Bartlett E. Cushing, of Wareham, Mass., for intervening petitioner Frank L. Sample, Jr., Inc.

George P. Ponte, of New Bedford, Mass., for Stanley Oil Co., Inc.

Thomas H. Walsh, of Boston, Mass., for Harbor Supply Oil Co., Inc.

J. B. Weitzman, of New Bedford, Mass., for Seaview Fish Co., Inc., and others.

WYZANSKI, District Judge.

The single issue is whether the Act of June 5, 1920, c. 250, Sec. 30, subsec. P, 41 Stat. 1005, 46 U.S.C.A. § 971, gives a maritime lien to persons who supply gas, oil, coal, other fuel, funds for taxes on fuel, batteries and engine wiping rags to a vessel fishing on the lay system.

The applicable statute provides that "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

The vessel here involved is the oil screw fishing vessel, Dirigo First. At the time the supplies were furnished, the vessel was not subject to a preferred mortgage. It was owned by Henry W. Gallant, who also acted as master and captain. The vessel was being operated as a fishing vessel on the lay system or, as it is sometimes called, on shares. It is agreed that this system is substantially similar to that described in the unreported opinion in O'Hara Vessels, Inc. v. Thomas B. Hassett, Collector of Internal Revenue, D.C.Mass., 60 F.Supp. 672. Under this system, as in many other forms of running vessels, the owner-master, Gallant, hires a crew as his employees, directs them, determines the direction and length of the vessel's voyage and runs the risks of loss of the vessel, damage to or by the vessel, taxes on the vessel, social security taxes and liability for injury suffered by the crew. But the unique characteristic of the system is the method by which the crew is paid. When the fishing vessel returns to port, the captain arranges to have the fish sold at auction and the proceeds of the auction are than divided according to a formula called the lay. Pursuant to this formula, there are first subtracted from the total amount received at auction charges for discount, wharfage and a fee for scales. The balance is called the "gross stock". From gross stock, there are then deducted charges for gear, oil, light, sounding machine, watch and sometimes a special fixed compensation for the engineer known as "engineer's per." The balance is called the "net stock." A fraction, generally one-quarter, of the net stock is paid to the owner of the vessel (who in turn pays to the master, if he be other than the owner, a fifth of that quarter as compensation or "skipperage"). From the remaining fraction, generally three-quarters of the net stock, there are deducted charges for food, bait and the like. What remains is then distributed to the captain and the crew, each person receiving an equal share of that remainder. If no fish is caught or for some other reason there are no proceeds ·from a fish auction, the voyage is called "a broker". Then there is no gross stock, no net stock, and no remainder to be divided on shares, so that the members of the crew

676

go unpaid, unless the owner or master chooses to make a gratuitous distribution.

In the case at bar, as is usual under this system, the owner-master or someone acting under his direction placed the orders for the supplies.

In the case at bar those who supplied the gas, oil, coal, other fuel, funds for taxes on fuel, batteries and engine wiping rags supplied them on the credit of the vessel and charged the supplies accordingly on their books. At the time these supplies were furnished, the suppliers knew that the Dirigo First was operating on a lay system, although they did not know the details.

If this vessel had not been operated on the lay system it is conceded that the lien statute, above quoted, would apply. What was furnished constituted in the words of the statute "supplies * * * or other necessaries." And these were furnished "upon the order of the owner of such vessel, or of a person authorized by the owner." But it is argued that this case falls outside the ordinary rule since under the lay system, here involved, the charges for supplies are used in computing the compensation of the captain and the crew. From this, it is said to follow that the supplier does not get a lien.

That argument cannot prevail. No part of the lay system and no rule of law subjects a member of the crew to liability for supplies. Under the lay system a member of the crew will not get paid, it is true, until certain charges are first met. But he has not given anyone power to order supplies for his account. He runs merely a risk of non-payment for the time he spent fishing,—not a risk of being out-of-pocket. His risk of non-payment is no concern of third parties. They must continue to look for payment elsewhere. And in this case they looked to the vessel for payment.

In short, the fact that the owner-master has agreed with the crew upon a method of calculating the crew's wages with reference to the costs of the vessel's operations and supplies and with reference to the sales proceeds of such fish as are caught does not alter the owner-master's status in ordering supplies and does not take either the vessel or those who supply necessaries outside the scope of Act of June 5, 1920 c. 250, Sec. 30, Subsec. P, 41 Stat. 1005, 46 U.S.C.A. § 971.

If the meagre report of Nellie B. Fitzpatrick v. Trawler Nina B.,[1] 1935 (D.Mass.) be to the contrary, I decline to follow it. The other case cited to me, The Francis J. O'Hara, Inc., D.C., 229 F. 312, is plainly distinguishable from the case at bar. There the master and the owner were different persons. Without authority from the owner, the master bought salt. It was held that the seller did not acquire a lien because the salt had not been supplied upon the order of the owner or of a person authorized by the owner. No such problem arises in the instant case where the owner himself ordered the supplies.

A decree may be prepared in favor of the lien claimants.

---

[1] No opinion for publication.