**O'HARA VESSELS, Inc., v. HASSETT, Collector of Internal Revenue.**

No. 1079.

District Court, D. Massachusetts.

April 23, 1942.

Joseph N. Welch, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Joseph W. Burns, Sp. Assts. to the Atty. Gen., for defendant.

WYZANSKI, District Judge.

(1) The plaintiff is O'Hara Vessels, Inc., a Massachusetts corporation, with a principal office in Boston, Massachusetts. The defendant is Thomas B. Hassett, Collector of Internal Revenue for the District of Massachusetts.

(2) This is an action under 28 U.S.C.A. § 41(5), brought to recover taxes paid by the plaintiff on its own account to the defendant under the provisions of Chapter IX, subchapter A, of the Internal Revenue Code, as amended, 26 U.S.C.A. Int.Rev.Code, § 1410. The taxes for which recovery is sought were laid on account of employment in the first quarter, that is, January, February and March of 1940. During that period the plaintiff was the owner of the schooners Lark, Gossoon, Mary E. O'Hara, Gertrude deCosta, and the Shamrock. The plaintiff owned three-fourths of the Lark and the Gossoon and was the sole owner of the other boats. Captain Ernest J. Parsons was the owner of one-fourth of the Lark, and another person was the owner of one-fourth of the Gossoon. Each of the boats was an American vessel of over 10 net tons, engaged in commercial fishing.

(3) These fishing schooners were then operated on what is known as the "quarter lay" basis. Under that system when fish are brought in from a trip they are sold through an auctioneer on the Fish Exchange at such time as the captain of the vessel determines. That auctioneer is an employee of the Exchange and receives a stipulated fee for selling each catch. From the total amount received at the auction there are subtracted discount, wharfage, and a fee for scales, and the resulting amount is called the "gross stock". Thereafter there is deducted from gross stock amounts for gear, oil, engineer's "per", light, sounding machine, and watch, and the resulting amount is called the "net stock". The net stock is then divided into quarters and distributed by the captain or purser. Three-quarters are subjected to charges for food, bait and the like and are then distributed to the captain and the crew, each person receiving the same fraction of that three-quarters. The other quarter is distributed to the owner. The owner pays one-fifth of that quarter, or 5 per cent. of the net stock, to the captain as "skipperage". The owner keeps the balance of that quarter, or 20 per cent. of the net stock.

(4) The engineer is a member of the crew but unlike other members of the crew is guaranteed $10 per trip. The engineer also receives $25 a month on account of duties which he performs at times when the vessel is in port.

(5) The compensation of the captain in his role as captain and not as owner includes a share equivalent to that of any member of the crew's share in the net stock and also his skipperage which amounts to 5 per cent. of the net stock.

(6) In procuring supplies for the trip, such as fuel oil, gear, food, and bait, the captain places the necessary orders in his own name or the name of the boat but on the credit of the captain.

(7) The captain assembles such crew as seems to him appropriate. He has the power to refuse a person who comes as a member of the crew or as a substitute for a member of the crew. He has the power to hire and fire. When the crew is at sea he has the usual captain's power to direct the men, to determine the watches they shall serve, and to exercise in other ways a master's authority.

(8) The captain determines where the vessel shall go to fish and when it shall return from its voyage. He does not customarily communicate with the plaintiff or with others on shore except for the purpose of inquiring as to the then current prices for fish. In case of accident he communicates if necessary with the Coast Guard. He does not customarily communicate directly with the plaintiff.

(9) The crew were covered by a labor contract during all times material to this suit. That contract (Plaintiff's Exhibit 4), made on June 16, 1939, was executed in like form for each of the boats involved in this litigation. It was executed on be-

half of the plaintiff corporation by one of its officers, Frederick J. O'Hara. It was executed on behalf of the Atlantic Fishermen's Union by Patrick McHugh. The captains of the vessels did not participate in the collective bargaining negotiations which led to the labor contract. The captain of each of the five vessels was instructed by the plaintiff that, in connection with the voyages taken by that vessel, the terms of this labor contract were to be followed.

(10) Ordinarily, the captains receive from the company no detailed directions with respect to the handling of the crews. However, in addition to being instructed to follow the labor contract, recently the captains were instructed by the plaintiff not to employ aliens. Moreover the plaintiff hired the engineers who served on the boats. The plaintiff also retained the power to hire and fire the captain and to substitute for already existing captains other captains of the plaintiff's choice.

(11) The members of the crew received no guaranty from the plaintiff as to the amounts that they would earn on a voyage. However, in rare cases in which there were what are known as "brokers", that is to say, completely unsuccessful trips, the plaintiff at different times gave to the members of the crew approximately $5 each.

(12) The captain's skipperage, as above stated, is paid out of the owners' quarter. Sometimes the captain deducts that skipperage prior to turning the quarter over to the owners; at other times the full quarter is turned over to the owners, the captain runs up an account for his skipperage and ultimately receives payment either by check or in cash from the company.

(13) The plaintiff has taken out liability insurance policies with respect to each of these vessels. The plaintiff has set forth in the policies and has paid premiums upon the number of persons, including the captain, estimated to be engaged in connection with a normal voyage of each of the vessels. At various times in the past claims have been made on account of accidents to members of the crews of these vessels; these claims have been presented to the insurance company under these policies; and such claims have been settled by the insurance company.

(14) The captain and the members of the crew understand that except where they are personally at fault they do not undertake any liability for collisions which the vessel may have with other vessels or for injury which may be sustained by other members of the crew.

(15) The captains of the vessels have not reported themselves as employers under the Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev.Code, § 1400 et seq., and the Social Security Act, 42 U.S. C.A. § 301 et seq., and like statutes.

(16) The captains regard themselves as in the employ of the plaintiff company.

(17) I find as an ultimate fact and I conclude as a matter of law that the members of the crews are "employees" engaged in "employment" subject to the taxing provisions of the Federal Insurance Contributions Act and the Social Security Act.

(18) I find as an ultimate fact and I conclude as a matter of law that the captain is an "employee" engaged in "employment" subject to the taxing provisions of the Federal Insurance Contributions Act and the Social Security Act.

(19) I find as an ultimate fact and I conclude as a matter of law that the plaintiff is the "employer" of the captains and of the members of the crews within the meaning of the applicable provisions of the Federal Insurance Contributions Act and the Social Security Act. I also find and conclude that the plaintiff is liable for taxes on account of the "employment" of the captains and members of the crews of the five vessels here in controversy for the period of time covered by the complaint.

(20) I conclude as a matter of law that the plaintiff is not entitled to recover any amount from the defendant.