123 T.C. No. 12


UNITED STATES TAX COURT


JAMES E. ANDERSON AND CHERYL J. LATOS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7425-02.               Filed August 19, 2004.


        Sec. 3121(b)(20), I.R.C., classifies as self-
employed those crew members of a fishing boat, with a
crew of fewer than 10, who are compensated with a share
of the boat's catch of fish or a share of the proceeds
from the sale of the catch if the amounts of their
shares depend on the amount of the catch.  Sec.
31.3121(b)(20)-1(a), Employment Tax Regs., provides
that if a crew member's share "<u>depends solely</u> on the
amount of the boat's * * * catch of fish" (emphasis
added), it qualifies as income from self-employment.

        During 1997, P worked as a crew member or captain
on fishing boats with crews of fewer than five members.
The fishing boat owners' expenses for fuel, ice, and
lubricating oil were subtracted from the proceeds of
sale of the catches of fish to determine P's
compensatory share of the proceeds of each voyage.

        On their 1997 joint Federal income tax return, Ps
failed to report self-employment tax on compensation P

received for working as a crew member or captain on small fishing boats during 1997. R determined Ps are liable under sec. 1401, I.R.C., for self-employment tax with respect to Ps' 1997 tax year on the ground that P was a self-employed fishing boat worker during 1997.

Ps argue P was an employee under sec. 3121(b)(20), I.R.C., on the ground that his share of proceeds of the catches of fish did not depend solely on the amount of the catch because operating expenses were subtracted in computing his share.

Held: P was self-employed under sec. 3121(b)(20), I.R.C., because proceeds from the sale of the catches of fish after subtraction of operating expenses depend on the amount of each catch. We interpret the "depends solely" provision of sec. 31.3121(b)(20)-1, Employment Tax Regs., as excluding only additional fixed payments to crew members, and P did not receive any such payments.

James E. Anderson and Cheryl J. Latos, pro sese.

John Aletta, for respondent.

OPINION

BEGHE, Judge: Respondent determined petitioners are liable under section 1401 for self-employment tax of $5,764 with respect to their 1997 tax year.[1]

The issue for decision is whether, during 1997, James Anderson (petitioner) was a self-employed worker on fishing boats under section 3121(b)(20), making petitioners liable for self-

---

[1]Unless otherwise specified, all section references are to the Internal Revenue Code in effect for the year at issue.

employment tax under section 1401. We uphold respondent's determination that petitioner was self-employed.

Background

This case is before the Court fully stipulated, and the facts are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners were married and resided in Wood River Junction, Rhode Island, when they filed their petition in this case.

During January 1997, petitioner worked as a crew member on the fishing boat Enterprise, and thereafter, through December 1997, on the fishing boat Elizabeth R. The Enterprise and Elizabeth R. (the boats) were owned, respectively, by Dan Barlow and Doug Rowell (collectively, the boat owners). At the times petitioner worked on the boats during 1997, the boats had crews of fewer than five people. Petitioner sometimes worked on the boats as captain and sometimes as a crew member. More precisely, schedules computing the shares of proceeds earned by petitioner and the other crew members from each voyage of the Elizabeth R. during 1997 indicate petitioner worked as captain for only one voyage of the Elizabeth R. There are no such schedules in the record for petitioner's fishing voyages on the Enterprise.

Proceeds from catches of fish during 1997 by the Enterprise and the Elizabeth R. were divided as follows. The boat's expenses for fuel, ice, and lubricating oil were subtracted from

the gross proceeds of the sale of the catch to determine the net proceeds of the voyage. The crew members, including the captain, were allocated 50 percent of the net proceeds (the crew members' share), and the boat owner and the captain were allocated 50 percent of the net proceeds. The crew members, including the captain, shared the crew members' share equally after subtracting the crew's total expenses for food, payments to "lumpers" (laborers employed to help unload the catch), and other miscellaneous items. When petitioner worked as captain, he received a crew member's share and a percentage of the 50-percent share allocated to the boat owner and the captain.[2]

Dapper Fisheries, Inc., and Rowell Fisheries, Inc.,[3] issued Forms 1099-MISC, Miscellaneous Income, to petitioner reflecting "fishing boat proceeds" of $3,832.23 and $46,653.96 he received

---

[2]The settlement sheet for the voyage of the Elizabeth R. on which petitioner served as captain indicates that his captain's share amounted to 15 percent of the boat owner's and captain's 50-percent share of the net proceeds, unreduced by expenses for food, payments to lumpers, and miscellaneous items. Other settlement sheets maintained for the Elizabeth R. indicate that petitioner's crew member's share for four voyages was charged for "clothing" and for one voyage was charged for "supplies."

[3]Although Dan Barlow and Doug Rowell owned the Enterprise and Elizabeth R., respectively, Dapper Fisheries, Inc., and Rowell Fisheries, Inc., were listed as the "payers" on the Forms 1099-MISC, Miscellaneous Income, issued to petitioner. Whether the fishing boat owner's shares and payments referred to supra note 2 and the text were actually received or paid by the boat owners or the corporations has no bearing on the outcome of this case.

for his work during 1997 on the <u>Enterprise</u> and the <u>Elizabeth R.</u>, respectively.

Petitioner did not receive health insurance benefits[4] or any other payments from the boat owners on account of his fishing activities during 1997.

On Schedule C, Profit or Loss From Business, of their 1997 Federal income tax return, petitioners reported gross income of $50,486 from petitioner's fishing activities and claimed no expenses as deductions. On Schedule A, Itemized Deductions, of their 1997 return, petitioners claimed unreimbursed employee business expenses of $4,438 and gross medical expenses of $7,137, which included health insurance premiums of $5,077. Petitioners did not pay their reported 1997 income tax liability of $3,491. Petitioners also failed to report or pay self-employment tax on petitioner's fishing activities.

On May 10, 1999, petitioners filed Form 1040X, Amended U.S. Individual Income Tax Return, for 1997, reporting no income tax liability for income petitioner received from his fishing activities.[5]

---

[4]We interpret this inartfully drafted stipulation to mean that neither the boat owners nor the corporations paid petitioner any additional amount to fund his payments of health insurance premiums.

[5]Petitioners were the petitioners in <u>Anderson v. Commissioner</u>, T.C. Memo. 2003-112, a case under sec. 6330 concerning their failure to pay Federal income tax reported on

(continued...)

During 2000 and 2001, petitioners and respondent agreed to extend the period of limitations on assessment of petitioners' 1997 income tax liability to March 31, 2002, most likely to give respondent time to issue a technical advice memorandum (Tech. Adv. Mem. 2002-11-005 (Mar. 15, 2002)) relating to facts substantially identical to those of this case.[6]

On February 12, 2002, respondent issued a statutory notice of deficiency to petitioners for 1997; respondent determined petitioners were liable for self-employment tax of $5,764 for compensation petitioner received from his fishing activities; respondent also reclassified $2,031 of petitioners' health insurance premiums and all $4,438 of petitioners' unreimbursed employee business expenses as business expenses reportable on Schedule C.[7]

---

[5](...continued)
their original 1997 return.  Petitioners argued that the boat owners' failure to withhold 1996 and 1997 Federal income tax from petitioner's wages relieved them from liability for the income tax.  The Court, among other things, upheld respondent's determination to collect by levy the income tax liability shown on their 1997 return.  See also Anderson v. Commissioner, T.C. Memo. 2000-311.

[6]The technical advice memorandum generally reflected respondent's position in this case.  Technical advice memoranda are a type of private letter ruling that is not to be cited as precedent unless regulations so provide.  Sec. 6110(k)(3).  No regulations so provide here.

[7]In the statutory notice, respondent determined petitioners are liable for self-employment tax of $6,605, which was thereafter reduced to $5,764 because respondent allowed
(continued...)

Discussion

Petitioners argue they are not liable for self-employment tax on the ground that petitioner was an employee of the boat owners or operators when he worked as a crew member or captain in 1997. Respondent argues petitioner was self-employed.

Inasmuch as respondent has determined that petitioner was self-employed and that petitioners are liable for self-employment tax under section 1401, and petitioners have filed a timely petition with this Court, we have jurisdiction of this case. See secs. 6211(a), 6213(a); Philbin v. Commissioner, 26 T.C. 1159 (1956); Anderson v. Commissioner, T.C. Memo. 2003-112; sec. 1.1401-1(a), Income Tax Regs.

It seems likely respondent's examination of petitioners' 1997 return and amended 1997 return began after July 22, 1998, and that section 7491(a) would apply to the case at hand. The parties do not address whether the burden of proof on the deficiency at issue should shift to respondent under section 7491(a). We need not decide that question because our decision on petitioners' 1997 self-employment tax liability does not depend on the burden of proof.

Section 1401 imposes a tax on self-employment income attributable to a taxpayer from any trade or business carried on

[7](...continued)
petitioners more 1997 Schedule C expense deductions than they had claimed on their original return.

by the taxpayer.  Secs. 1401(a), 1402(a) and (b); sec. 1.1401-1(a), Income Tax Regs.  The term "trade or business" has the same meaning under section 1402(a), defining "net earnings from self-employment", as under section 162.  Sec. 1402(c); Bot v. Commissioner, 118 T.C. 138, 146 (2002), affd. 353 F.3d 595 (8th Cir. 2003).  "Trade or business" under section 162 has been interpreted to mean an activity conducted "with continuity and regularity" and with the primary purpose of making income or a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Bot v. Commissioner, supra.  The carrying on of a trade or business for purposes of self-employment tax generally does not include the performance of services as an employee.  Sec. 1402(c)(2); Robinson v. Commissioner, 117 T.C. 308, 320 (2001).

Under section 3121(b)(20),[8] crew members of a fishing boat,

---

[8]Sec. 3121(b) provides:

SEC. 3121 (b). Employment.--For purposes of this chapter, the term "employment" means any service, of whatever nature, performed (A) by an employee for the person employing him * * *; except that such term shall not include --

* * * * * * *

(20) service (other than service described in paragraph 3(A)) performed by an individual on a boat engaged in catching fish or other forms of aquatic animal life under an arrangement with the owner or operator of such boat pursuant to which--

(A) such individual does not receive any cash remuneration other than as provided in subparagraph (B) and other than cash remuneration

(i) which does not exceed $100 per trip;

(ii) which is contingent on a minimum catch; and

(iii) which is paid solely for additional duties (such as mate, engineer, or cook) for which additional cash remuneration is traditional in the industry,

(B) such individual receives a share of the boat's (or the boats' in the case of a fishing operation involving more than one boat) catch of fish or other forms of aquatic animal life or a share of the proceeds from the sale of such catch, and

(continued...)

with a crew of fewer than 10, who are compensated with a share of
the boat's catch or a share of the proceeds from the sale of the
catch are classified as self-employed.

Petitioners argue petitioner is an employee under section
3121(b)(20) on the ground that his share of proceeds of the catch
of fish after subtraction of operating expenses does not depend
solely on the amount of the catch, as provided by section
31.3121(b)(20)-1(a), Employment Tax Regs., and the congressional
intent underlying section 3121(b)(20).  Petitioners argue that
Rev. Rul. 77-102, 1977-1 C.B. 299, under which petitioner would
be regarded as self-employed, is inconsistent with the intent of
Congress and has been revoked by section 31.3121(b)(20)-1(a),
Employment Tax Regs.  Petitioners argue that the canon of
statutory interpretation "expressio unius est exclusio alterius"
precludes an exception for the subtraction of operating expenses
from being read into section 3121(b)(20) because Congress had

---

[8](...continued)

> (C) the amount of such
> individual's share depends on the
> amount of the boat's (or the boats'
> in the case of a fishing operation
> involving more than one boat) catch
> of fish or other forms of aquatic
> animal life,

but only if the operating crew of such boat (or
each boat from which the individual receives a
share in the case of a fishing operation involving
more than one boat) is normally made up of fewer
than 10 individuals * * *.

previously amended the statute to provide for the $100 cash payment exception under section 3121(b)(20)(A) and for no other exception.

Respondent argues petitioner was self-employed under section 3121(b)(20) because he was compensated for his services exclusively through a share of the proceeds from the sale of the catch of fish, with the amount of compensation depending on the amount of the catch for each voyage, according to respondent's interpretation of section 3121(b)(20) and the regulation in accordance with the congressional intent underlying section 3121(b)(20). Respondent argues the Secretary did not revoke Rev. Rul. 77-102, supra, and that the revenue ruling is consistent with section 3121(b)(20) and the regulation. Respondent argues that the quoted canon of statutory construction does not apply; the issue of statutory construction presented is not whether to create another exception analogous to the $100 cash payment exception created by section 3121(b)(20)(A), but to construe the original text of section 3121(b)(20) to determine whether subtraction of operating expenses from the proceeds of the catch prevents an individual's share of the proceeds from depending on the amount of the catch.

Petitioners make two other arguments, which respondent disputes, that we briefly address at the end of this Opinion.

To decide this case, we must answer a question of first impression in this Court: whether the requirement of section 3121(b)(20) that the individual crew member receive a share of the "proceeds" from the sale of the catch that "depends on the amount" of the boat's catch means that only gross proceeds can depend on the amount of the boat's catch, as petitioners contend, or that proceeds after subtraction of operating expenses can also depend on the amount of the catch, as respondent contends. The statute, conference report and other legislative history, regulation and its preamble, and caselaw do not specifically address this question.

As explained below, we hold petitioner was self-employed under section 3121(b)(20) on the ground that proceeds from the sale of the catch after subtraction of operating expenses depend on the amount of the boat's catch.

Respondent explicitly acknowledges in his reply brief and petitioners implicitly acknowledge (by recourse to and use of legislative history) that section 3121(b)(20) is ambiguous and requires interpretation. In arriving at our interpretation, we examine the legislative history of section 3121(b)(20) and the history of commercial practices of the fishing industry, which were referred to in the legislative history, to understand the commercial context of the employment tax issue that Congress addressed.

We address the issue under four headings.  First, we examine the history of the commercial practices and employment tax treatment of fishing boat workers and fishing boat owners. Second, we interpret the requirement that an individual receive a share of the "proceeds" from the sale of the catch that "depends on the amount" of the boat's catch.  In arriving at our interpretation, we examine:  (a) The general meaning of the terms in section 3121(b)(20) and section 31.3121(b)(20)-1(a), Employment Tax Regs.; (b) the legislative history and congressional intent underlying section 3121(b)(20) and the issuance of section 31.3121(b)(20)-1(a), Employment Tax Regs.; (c) Rev. Rul. 77-102, <u>supra</u>, and (d) the $100 exception in section 3121(b)(20)(A) and whether and how the canon of statutory construction "expressio unius est exclusio alterius" bears on the question.  Third, we apply section 3121(b)(20) to petitioner's fishing activities in light of our interpretation of the statute and the regulation that his share of the proceeds after subtraction of operating expenses depended on the amount of the catch.  Fourth, we consider petitioners' other arguments.

1.  <u>History of Compensation Arrangements for Fishing Boat Workers</u>

a.  <u>The Lay System</u>

It has been customary in the fishing industry for fishing boat owners to compensate their workers under the "lay" or "share" system; under this system, workers on fishing boats

receive a share of the proceeds from fishing operations on a voyage basis rather than previously agreed-upon wages or fees. See, e.g., Cromwell v. Slaney, 65 F.2d 940, 941 (1st Cir. 1933); United States v. Laflin, 24 F.2d 683, 685 (9th Cir. 1928) ("It has been the maritime law [for more than 700 years] that agreements, by which seamen, engaged in a fishing or whaling voyage, are to receive for their services shares of the profits of the voyage, are contracts of hiring, and the shares so agreed upon are in the nature of wages, to recover which actions may be maintained after the end of the voyage."); The Carrier Dove, 97 F. 111, 112 (1st Cir. 1899); Cape Shore Fish Co. v. United States, 165 Ct. Cl. 630, 638, 330 F.2d 961, 965 (1964); Brown v. Hicks, 24 F. 811, 812 (C.C.D. Mass. 1885) (shipmaster contracted with the boat owner for the "the one-fifteenth lay or share of the net proceeds of the cargo").[9]

---

[9]In Cape Shore Fish Co. v. United States, 165 Ct. Cl. 630, 643 n.13, 330 F.2d 961, 969 n.13 (1964), the Court of Claims quoted the following passage from Melville's Moby Dick 57-58 (Intl. Collectors Lib. ed.) regarding lays:

> "I was already aware that in the whaling business they paid no wages; but all hands, including the captain, received certain shares of the profits called lays, and that these lays were proportioned to the degree of importance pertaining to the respective duties of the ship's company."

b. Pre-Section 3121(b)(20) Classification of Fishing Boat Workers

Under the Federal Insurance Contributions Act (FICA) and Federal Unemployment Tax Act (FUTA), the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". Secs. 3111, 3121(d)(2), 3301, 3306(i).

To determine whether fishing boat workers were employees or independent contractors, courts considered the facts and circumstances of each boat owner/worker relationship and relied on a multiplicity of factors. See Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 3 (1962); see also secs. 31.3121(d)-1(c)(2), 31.3306(i)-1(b), 31.3401(c)-1(b), Employment Tax Regs. The multifactor facts and circumstances analysis and disagreement among the courts over the application of common law or maritime law to determine the employment status of fishing boat workers led to inconsistent results,[10] which made it difficult for boat owners to predict and determine whether their workers would be held to be independent contractors or employees.

---

[10]See Enochs v. Williams Packing & Navigation Co., 370 U.S. 1 (1962) (holding fishermen were employees); United States v. Crawford Packing Co., 330 F.2d 194, 196 (5th Cir. 1964) (holding fishermen were not employees); Cape Shore Fish Co. v. United States, supra (holding fishermen were employees; United States v. W.M. Webb, Inc., 402 F.2d 956 (5th Cir. 1968) (holding fishermen were not employees), revd. 397 U.S. 179 (1970).

In <u>United States v. W.M. Webb, Inc.</u>, 397 U.S. 179 (1970), the Supreme Court finally held that the employment status of fishing boat captains and crew members should be decided under maritime law.  This had the effect of increasing the likelihood that many fishing boat workers would be classified as employees for employment tax purposes.  See Marmoll, "Employment Status-- Employee v. Independent Contractor", 391-3rd Tax Management Portfolio (BNA), A-79 (2001) (citing <u>Anderson v. United States</u>, 450 F.2d 567 (5th Cir. 1971); Rev. Rul. 72-385, 1972-2 C.B. 535).

    c.  <u>1976 Version of Section 3121(b)(20)</u>

In 1976, Congress responded to the plight of the small fishing boat owners by enacting the first version of section 3121(b)(20), with an effective date of December 31, 1971, under the Tax Reform Act of 1976, Pub. L. 94-455, sec. 1207(e)(1)(A) and (f)(4), 90 Stat. 1706, 1708.  Under the Revenue Act of 1978, Pub. L. 95-600, sec. 701(z)(1), 92 Stat. 2921, section 3121(b)(20) was made retroactive to December 31, 1954.

In explaining the genesis of section 3121(b)(20), the report by the Senate Committee on Finance summarized the practical problems that would be encountered by small fishing boat owners if they were required to treat their workers as employees:

> The crews that work on boats used in fishing * * * are frequently "pickup" crews composed of individuals who may work for only a few voyages, and sometimes even for only one voyage.  * * *  Thus, the voyage partakes more of the nature of a joint venture than it does of an employment situation.

Under these circumstances, it is difficult and impractical for the boat operator to keep the necessary records to calculate his tax obligations as an employer, and it is equally difficult for him to withhold the appropriate taxes for payment.  * * *

Another factor contributing to the difficulty in which such boat operators find themselves is the nature of the remuneration paid to their crewmen.  In many cases, the crewmen are paid no regular salary, but instead receive a portion of the catch.  In practice, the catch is often sold upon return to shore, usually by the boat operator, and each crewman is immediately paid a percentage of the proceeds of the catch that is equivalent to the portion of the catch for which he agreed to work.  In view of the basic informality of these arrangements, and the consequent difficulty in adhering to the obligations required of employers by the Internal Revenue Code, the committee believes it appropriate to remove these obligations from certain small boat operators by treating their crewmen as self-employed individuals. The committee believes that this will recognize the basic nature of the arrangement between the boat operators and the crewmen since the crewmen, under these arrangements, should find it much simpler and more convenient to calculate and report their own income for tax purposes than do the boat operators.

In treating these situations as instances of employment of crewmen by boat operators, the Internal Revenue Service has not only required current payment of employment taxes by the boat operators, but has also assessed these taxes retroactively for all tax years still open under the statute of limitations. As a result of possibly sizeable assessments, many boat operators may face bankruptcy.  [S. Rept. 94-938 (Pt. I), at 385 (1976), 1976-3 C.B. (Vol. 3) 49, 423.]

As alluded to in the Senate report and explained in more detail by the Joint Committee on Taxation in its General Explanation of the Revenue Act of 1976, Congress extended retroactive relief to small fishing boat owners to prevent

financial hardship arising from proposed tax assessments for prior years in cases where they had not treated their workers as employees. See id.; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 380-381 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 1, 392-393.[11]

d. Rev. Rul. 77-102

Following enactment of section 3121(b)(20) in 1976, the Commissioner issued Rev. Rul. 77-102, 1977-1 C.B. 299, which explains respondent's position in this case that proceeds after subtraction of operating expenses depend on the amount of the boat's catch of fish under section 3121(b)(20). In situation 1 of Rev. Rul. 77-102, supra, the boat owner employs a captain and eight other crew members to perform services. Six of the nine crew members receive remuneration by dividing equally 60 percent of the net proceeds from the sale of the catch after subtracting from the gross proceeds certain specified expenses such as ice and fuel and a payment of $25 each to the mate, engineer, and

---

[11]As explained by the Joint Committee on Taxation, the retroactive effective date barred retroactive deficiency assessments against boat owners who treated fishing boat workers as self-employed before enactment of sec. 3121(b)(20) for past years still open under the statute of limitations. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 382 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 1, 394. However, crew members treated as employees before enactment of sec. 3121(b)(20) were not required to pay the higher rate of Social Security tax required of self-employed individuals, nor were refunds of the employer's share of social security taxes to be made to boat owners who had paid them. See id.

cook.  The Commissioner ruled that the 6 crew members are self-employed under section 3121(b)(20) because they do not receive any cash remuneration other than a share of the proceeds from the sale of the catch after subtraction of operating expenses, their share depends on the amount of the catch, and the operating crew of the boat normally consists of fewer than 10 individuals.  The Commissioner also ruled that the mate, the cook, and the engineer were employees under section 3121(b)(20) because the $25 flat fee compensation for services they performed at sea did "not depend on the amount of the boat's catch of fish".

    e.  Section 31.3121(b)(20)-1(a), Employment Tax Regs.

In 1980, the Commissioner promulgated section 31.3121(b)(20)-1(a), Employment Tax Regs., which purports to paraphrase section 3121(b)(20) and provides that if a crew member's share "depends solely on the amount of the boat's * * * catch of fish" (emphasis added), he qualifies for self-employment

status.[12]  See 45 Fed. Reg. 57122 (Aug. 27, 1980); see also T.D.

7716, 1980-2 C.B. 241.

    f.  <u>Flamingo Fish Corp. v. United States</u>

    In <u>Flamingo Fish Corp. v. United States</u>, 32 Fed. Cl. 377

(1994), the taxpayer allocated a "per", which is "a small

additional sum of money * * *, usually $25 or a multiple thereof,

---

[12]Sec. 31.3121(b)(20)-1(a), Employment Tax Regs., provides
in pertinent part:

    (a) In general. (1) Service performed * * * by an
individual on a boat engaged in catching fish * * * are
excepted from employment if--

    (i) The individual receives a * * * a share of the
proceeds from the sale of the [boat's] catch [of fish],

    (ii) The amount of the individual's share <u>depends
solely</u> on the amount of the boat's * * * catch of fish,

    (iii) The individual does not receive and is not
entitled to receive, any cash remuneration, other than
remuneration that is described in sub-division (1) of this
subparagraph

       *    *    *    *    *    *    *

    (2) The requirement of subdivision (ii) is not
satisfied if there exists an agreement with the boat's * * *
owner or operator by which the individual's remuneration is
determined <u>partially or fully</u> by a factor not dependent on
the size of the catch.  For example, if a boat is operated
under a remuneration arrangement, e.g., a collective
agreement which specifies that crew members, in addition to
receiving a share of the catch, are entitled to an hourly
wage for repairing nets, regardless of whether this wage is
actually paid, then all the crew members covered by the
arrangement are entitled to receive cash remuneration other
than a share of the catch and their services are not
excepted from employment by section 3121(b)(20).
[Emphasis added.]

to the mate, cook, and engineer * * * in recognition of services they perform at sea, in addition to their normal duties", according to a sliding scale or schedule that depended on a percentage of the proceeds from the catch.

The Court of Claims held that crew members who receive pers are employees because per payments are flat fees that do not depend on the amount of a particular catch as required by section 3121(b)(20) as originally enacted. The Court of Claims upheld Rev. Rul. 77-102, supra, regarding the interpretation of the "pers" issue and section 31.3121(b)(20)-1(a), Employment Tax Regs., as reasonable interpretations of section 3121(b)(20). The Court of Claims did not discuss nor was it called upon to consider the Commissioner's interpretation in Rev. Rul. 77-102, supra, of "proceeds" as including proceeds after subtraction of operating expenses.

g. 1996 Amendment of Section 3121(b)(20)

In 1996, Congress overruled Flamingo Fish Corp. v. United States, supra, by adding subparagraph (A) to section 3121(b)(20), as part of the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1116, 110 Stat. 1762. Section 3121(b)(20) (A) applies to remuneration paid after December 31, 1994; it also applies to remuneration paid after December 31, 1984, and before January 1, 1995, unless the payor treated the remuneration when paid as subject to FICA taxes. Under section 3121(b)(20)(A),

crew members are not employees if they receive cash payments that do not exceed $100 per trip, are contingent on a minimum catch, and are paid solely for additional duties (e.g., as mate, engineer, or cook) for which additional cash remuneration is traditional in the industry. In so providing, section 3121(b)(20)(A) also invalidated the part of Rev. Rul. 77-102, 1977-1 C.B. 299, that ruled that the receipt of a per would disqualify a crew member from self-employment status.

2. Interpretation of the Requirement That Crew Members Receive a Share of the "Proceeds" From the Sale of the Catch That "Depends on the Amount" of the Catch

The language of the statute and that of the corresponding regulation defining the requirements for self-employment status are not identical. Section 3121(b)(20) classifies a fishing boat worker as self-employed if the amount of the worker's share of proceeds "depends on the amount of the boat's * * * catch of fish". (Emphasis added.) Section 31.3121(b)(20)-1(a)(1), Employment Tax Regs., classifies a fishing boat worker as self-employed if the amount of the worker's share of proceeds "depends solely on the amount of the boat's * * * catch of fish". (Emphasis added.) Under section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., the provision that the amount of the share "[depend] solely" on the amount of the catch is not satisfied if the fishing boat worker's remuneration is determined "partially or fully" by a factor not dependent on the size of the catch.

a. <u>General Meaning of the Terms in Section 3121(b)(20) and Section 31.3121(b)(20)-1(a), Employment Tax Regs.</u>

The general dictionary definition of "depend" encompasses:

1: to be contingent: a: to require something as a necessary condition--used with <u>on</u> or <u>upon</u> (we depend on food to keep us alive) (his life depends on his undergoing an operation) (the merit of his piece depended on the brilliant things which arose under his pen as he went along--Matthew Arnold) b: to become conditioned or based (as by subjection or relatedness--used with <u>on</u> or <u>upon</u>) (sciences depend on one another) (prices depend upon supply and demand) * * *. [Webster's Third New International Dictionary 604 (1974).]

The general dictionary definition of "solely" encompasses:

"1: without an associate (as a companion or assistant): singly, alone * * *; 2: to the exclusion of alternate or competing things (as persons, purposes, duties) (done solely for money) (a privilege granted solely to him) (rely solely on oneself)." <u>Id.</u> at 2168.

The general dictionary definition of "proceeds" encompasses "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in: yield, returns; * * * the net profits made on something". <u>Id.</u> at 1807. Black's Law Dictionary defines "proceeds" as "The value of land, goods, or investments when converted into money; the amount of money received from a sale. * * * Something received upon selling, exchanging, collecting, or otherwise disposing of collateral." Black's Law Dictionary 1242 (8th ed. 2004).

Black's Law Dictionary also provides the following subentry

definition of "net proceeds" as a type of proceeds: "The amount received in a transaction minus the costs of the transaction (such as expenses and commissions).--Also termed net balance." Id.; see also id., Guide to the Dictionary, at xxiii, regarding subentries ("If a term has more than one sense, then the corresponding subentries are placed under the appropriate sense of that term."). Black's Law Dictionary defines "profit" as "The excess of revenues over expenditures in a business transaction; gain", which is generally synonymous with the definition of "net proceeds". Id. at 1246.

In Phelps v. Harris, 101 U.S. 370, 380 (1879), explaining that lands received from the disposition of real estate fall under the definition of "proceeds", the Supreme Court stated: "Proceeds are not necessarily money. This is * * * a word of great generality." See Peabody Coal Co. v. Navajo Nation, 75 F.3d 457, 468 (9th Cir. 1996) (holding that Congress intended the term "proceeds" under the Navajo-Hopi Land Settlement Act of 1974 to mean "all economic benefit derived from the minerals"). The parties have not brought to our attention nor have we found through our own research any information that the term "proceeds" is to be interpreted restrictively under the usages of the fishing industry or of maritime law. Indeed, the fishing industry usage that treats the terms "lays" and "profits" as equivalent indicates that the primary meaning of the term

"proceeds" is proceeds after subtraction of operating expenses. See, e.g., Atl. Mut. Ins. Co. v. Commissioner, 523 U.S. 382 (1998); Hedden v. Richard, 149 U.S. 346, 348-349 (1893); Central Reserve Life Corp. v. Commissioner, 113 T.C. 231, 237 (1999) (it is appropriate to construe the meaning of section 816 of subchapter L of the Code, involving insurance companies, in light of its usage in the insurance industry, to the extent it has an established meaning in that industry).

The term "proceeds", as a "word of great generality", see Phelps v. Harris, supra at 380, refers to a general class that encompasses a collection of all forms of proceeds, including gross proceeds, net proceeds, and any other property received from an exchange of property, etc. As a matter of formal logic, proceeds from the sale of the catch of fish determined after subtraction of operating expenses is completely included in the greater class, proceeds from the sale of the catch; that is, net proceeds is a form of or subclass of proceeds. See Langer, An Introduction to Symbolic Logic 115-118 (3d ed. 1967).

b. Legislative History and Congressional Intent Underlying Section 3121(b)(20) and the Development of Section 31.3121(b)(20)-1(a), Employment Tax Regs.

Petitioners argue section 3121(b)(20) precludes self-employment status for fishing boat workers who receive proceeds after subtraction of operating expenses because those operating expenses do not depend "solely" on the amount of the catch, as

explicitly provided by section 31.3121(b)(20)-1(a), Employment Tax Regs., and implicitly provided by section 3121(b)(20) itself. Respondent interprets the term "depends solely" in the regulation to mean that section 3121(b)(20) excludes from "employment" services performed for any <u>additional</u> payment that does not depend on the amount of the catch. Respondent interprets the term "proceeds" to include proceeds after subtraction of operating expenses. We agree with respondent.

Statutory construction begins with the language of the relevant statute. <u>Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); <u>Fincher v. Commissioner</u>, 105 T.C. 126, 133-134 (1995). We may use legislative history to clarify an ambiguous statute. <u>Patterson v. Shumate</u>, 504 U.S. 753, 761 (1992); <u>Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG</u>, 335 F.3d 52, 57 (2d Cir. 2003); <u>Fincher v. Commissioner</u>, <u>supra</u>; <u>City of New York v. Commissioner</u>, 103 T.C. 481, 489 (1994), affd. 70 F.3d 142 (D.C. Cir. 1995). When a statute is ambiguous, the Court must find the interpretation that can most fairly be said to be embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested. <u>NLRB v. Lion Oil Co.</u>, 352 U.S. 282, 297 (1957). Reports by the Senate Committee on Finance are an authoritative source for legislative intent. <u>Thornburg v. Gingles</u>, 478 U.S. 30, 44 (1986); <u>Garcia v. United</u>

States, 469 U.S. 70, 76 (1984).

Because the Secretary promulgated section 31.3121(b)(20)-1, Employment Tax Regs., under his general authority to "prescribe all needful rules and regulations", see sec. 7805(a), the Court owes "the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision", see Rowan Cos. v. United States, 452 U.S. 247, 253 (1981). We defer to the Secretary's regulatory interpretation of the Code so long as it is reasonable. Cottage Sav. Association v. Commissioner, 499 U.S. 554, 560-561 (1991); Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 476-477 (1979). In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. Natl. Muffler Dealers Association, Inc. v. United States, supra at 477. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. Id. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Id. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny

Congress has devoted to the regulation during subsequent reenactments of the statute.  Id.

The language of the statute and the regulation is far from clear.  The dictionary definition of "depend" encompasses "to require something as a necessary condition" with the example "prices depend on supply and demand".  Webster's Third New International Dictionary 604 (1974).  In this example, "prices" depend on two factors, "supply" and "demand", and so cannot depend "solely" on either of them.  Section 3121(b)(20) does not use the word "solely", which implies that the amount of the catch is a necessary, but not exclusive, factor upon which the proceeds must depend.  The use of "solely" in section 31.3121(b)(20)-1, Employment Tax Regs., suggests that proceeds must depend only on the amount of the catch "to the exclusion of alternate or competing" factors such as operating expenses.  The definition of "proceeds" encompasses proceeds after subtraction of operating expenses.  See Webster's Third New International Dictionary 1807 (1974); Black's Law Dictionary 1242 (8th ed. 2004).

Logically speaking, uncritically applying the dictionary definitions of these terms to the statute and the regulation would lead to contradictory results.  Because the statute is ambiguous, we may use legislative history, see Patterson v. Shumate, supra at 761; Fincher v. Commissioner, supra at 133-134, to find the interpretation that can most fairly be said to be

embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested, see NLRB v. Lion Oil Co., supra at 297.[13]

Taken as a whole, the history of the fishing industry, the legislative history underlying section 3121(b)(20), the preamble to and the example in the regulation, and a logical and practical interpretation of the statute suggest that Congress, in enacting section 3121(b)(20), intended that proceeds after subtraction of operating expenses depend on the amount of the catch. We do not interpret the "depends solely" provision of section 31.3121(b)(20)-1, Employment Tax Regs., as precluding subtraction of operating expenses from proceeds.

For several centuries, fishing boat crew members working under the "lay" system have, for the most part, received a share of profits from the sale of the catch, or excess of revenues over expenses, which is synonymous with "net proceeds", rather than a

---

[13]Where the statutory language appears clear, we would require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein, see United States v. Am. Trucking Associations, 310 U.S. 534, 543-544 (1940); Huntsberry v. Commissioner, 83 T.C. 742, 747-748 (1984), particularly where we have a complex set of statutory provisions marked by a high degree of specificity, see Huntsberry v. Commissioner, supra at 748; cf. Occidental Petroleum Corp. v. United States, 231 Ct. Cl. 334, 685 F.2d 1346, 1348 (1982). The statutory language of sec. 3121(b)(20) and the regulation is not clear. Sec. 3121(b)(20) is not a statute with a complex set of provisions marked by a high degree of specificity. Even if the statute were clear, the legislative history does not necessarily provide unequivocal evidence of legislative purpose.

share of the gross proceeds or a share of the fish themselves.
See, e.g., Thomas v. Osborn, 60 U.S. 22, 29-30 (1856) ("a
lay--that is, a participation in profits"); Putnam v. Lower, 236
F.2d 561, 573 n.2 (9th Cir. 1956) ("the word 'lay' means a share
of the profits of a venture given in lieu of wages"); Old Point
Fish Co. v. Haywood, 109 F.2d 703 (4th Cir. 1940).[14]

The report by the Senate Committee on Finance indicates
Congress recognized longstanding industry practices of paying
fishing boat workers on the lay system with a share of the
proceeds from the catch after subtraction of operating expenses.
See S. Rept. 94-938 (Pt. I), supra at 384-385, 1976-3 C.B. (Vol.
3) at 422-423.  Section 3121(b)(20) was enacted to provide
administrative convenience and certainty to fishing boat owners
by eliminating the need to keep records to calculate tax
obligations of fishing boat workers who received payments on the
lay system, without interfering with or changing the longstanding
lay system of compensation.  See id. at 385-386, 1976-3 C.B.
(Vol. 3) at 423-424.

Compensation under the lay system necessarily means that the
proceeds of the catch depend on factors other than the amount of
the catch, including, but not limited to, the subtraction of

---

[14]Black's Law Dictionary 905 (8th ed. 2004) defines "lay" in
the context of maritime law as:  "A share of the profits of a
fishing or whaling trip, akin to wages, allotted to the officers
and seamen."

operating expenses.  We do not believe that Congress, in enacting section 3121(b)(20) to help fishing boat owners avoid financial hardship and employment tax record-keeping requirements, intended to limit the beneficial effects of section 3121(b)(20) by conferring self-employment status only on fishing boat crew members who receive a share of proceeds with no subtraction of operating expenses.  To hold otherwise would classify as employees a majority of crew members, who, under the lay system, usually receive a share of proceeds after subtraction of operating expenses.

Because we are a court with national jurisdiction over litigation involving the interpretation of the Federal tax statutes, see Lardas v. Commissioner, 99 T.C. 490 (1992), adopting petitioners' interpretation of section 3121(b)(20) would throw the small boat fishing industry into turmoil and create financial hardship for the owners.

Assuming as we do that most, if not all, small fishing boat owners have not filed Forms 940 and 941 to report and pay FUTA and FICA taxes for fishing boat workers who received proceeds from sales of catches after subtraction of operating expenses, the periods of limitation for assessments of those taxes would not have expired.  Secs. 6501(a), 6503(a)(1), 6213.  Our adoption of petitioners' interpretation of section 3121(b)(20) could be applied retroactively to assess employment taxes for previous tax

years in cases where boat owners treated as self-employed their workers who received a share of proceeds after subtraction of operating expenses as determined under the lay system. See S. Rept. 94-938, (Pt. I), <u>supra</u> at 385-386, 1976-3 C.B. (Vol. 3) at 423-424; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, <u>supra</u> at 380-381, 1976-3 C.B. (Vol. 2) at 392-393.[15] Any retroactive assessments would rewrite the compensation bargains entered into by fishing boat owners and operators with the workers in reliance on the applicability of section 3121(b)(20). Such assessments would create substantial financial hardship to the small fishing boat owners and a windfall to the workers, thereby frustrating the intent of Congress in enacting section 3121(b)(20). Even if respondent would appeal an adverse decision of this Court and suspend efforts to collect employment taxes from the small fishing boat owners, they would have contingent liabilities on their balance sheets that could interfere with their ability to obtain loans or sell their businesses.

---

[15]Under sec. 530 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2885, fishing boat owners who erroneously classified employees as self-employed might be relieved of employment tax liability, and fishing boat workers, including petitioner, would be deemed not to be employees of the owners for employment tax purposes, if certain conditions were satisfied. See <u>Joseph M. Grey Pub. Accountant, P.C. v. Commissioner</u>, 119 T.C. 121, 130 (2002), affd. 93 Fed. Appx. 473 (3d Cir. 2004). There is no record evidence whether the requirements of sec. 530 of the Revenue Act of 1978 would be applicable in the case at hand to relieve the boat owners of employment tax liabilities.

In enacting section 3121(b)(20), Congress stated that the relationship of the small fishing boat owners with "pickup" crews who share in the proceeds from the catch is more similar to a joint venture than to an employment arrangement. Generally, a partnership is synonymous with a joint venture. See secs. 761(a), 7701(a)(2). A partnership generally requires a community of interest in profits and losses. See Commissioner v. Tower, 327 U.S. 280, 287-288 (1946). Historically, crew members who work on the lay system have shared in the "profits" of the voyage. The partnership/joint venture analogy suggests Congress intended the term "share of the proceeds of the catch" to include proceeds after subtraction of operating expenses.[16]

Even though petitioners have a seemingly plausible argument that the "depends solely" provision of section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., is not satisfied if the share is reduced by operating expenses, we interpret the "depends solely" provision to mean that section 3121(b)(20) excludes from "employment" services performed for any additional payment,

---

[16]An unsuccessful fishing trip is known in the fishing trade as a "broker". See The Dirigo First, 60 F. Supp. 675, 675-676 (D. Mass. 1945) ("If no fish is caught or for some other reason there are no proceeds from a fish auction, the voyage is called 'a broker'. * * * the members of the crew go unpaid, unless the owner or master chooses to make a gratuitous distribution"); O'Hara Vessels, Inc. v. Hassett, 60 F. Supp. 672 (D. Mass. 1942). The broker situation suggests the lay system is similar to a joint venture because the fishing boat workers risk the loss of labor, time, and possibly other personal expenses.

whether or not made from the proceeds of the catch, that is fixed in amount or calculated on an hourly or minimum basis or other manner unrelated to the amount of the catch.

Section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., provides the following example of remuneration determined "partially or fully" by a factor not dependent on the size of the catch:

> For example, if a boat is operated under a remuneration arrangement, e.g., a collective agreement which specifies that crew members, in <u>addition</u> to receiving a share of the catch, are entitled to an hourly wage for repairing nets, regardless of whether this wage is actually paid, then all crew members covered by the arrangement are entitled to receive cash remuneration other than a share of the catch and their services are not excepted from employment by section 3121(b)(20). [Emphasis added.]

The preamble to the regulation states:

> In order for a crewman to be considered self-employed * * * The crew member must receive in payment for his services a fixed share * * * of the proceeds from the sale of the catch and he must be entitled to no other cash or property independent of the size of the catch; * * * The amount of the crew member's share must depend solely on the amount of the boat's catch, and therefore the amount of the share cannot be fixed at any minimum (in dollars or weight) * * *.

> * * * * * * *

> The regulation explicitly states that a crewman's share is not dependent solely on the amount of the boat's catch if the crewman is entitled under any individual or collective agreement to any fee, hourly wage, minimum for services, or any other amount unrelated to the size of the catch. * * * [45 Fed. Reg. 57122 (Aug. 27, 1980).]

We observe that an interpretation that the word "solely" excludes subtraction of operating expenses would not harmonize with the origin, intent, and purpose of the statute to help the small boat fishing industry. See Natl. Muffler Dealers Association, Inc. v. United States, 440 U.S. at 477. We do not interpret the regulation more strictly than section 3121(b)(20) itself. Section 3121(b)(20) does not mention "solely". The regulation was not promulgated substantially contemporaneously with section 3121(b)(20); it was promulgated in 1980, 4 years after the statute. The regulation has not been amended to reflect the enactment of section 3121(b)(20)(A) in 1996, which overruled Flamingo Fish Corp. v. United States, 32 Fed. Cl. 377 (1994), and allowed payments of $100 pers.

The purpose underlying the regulation and the use of the word "solely" in the preamble is to preclude self-employment status for crew members who receive additional remuneration for services in the form of "any fee, hourly wage, minimum for services," or "other cash or property independent of the size of the catch". (Emphasis added.) We also observe, consistently with our comment in the last sentence of section 2.a. of this Opinion, citing Langer's An Introduction to Symbolic Logic, that proceeds after subtraction of operating expenses is a subclass of proceeds and that operating expenses that reduce the proceeds differ from the disqualifying additional payments referred to in

the regulation.  Because the preamble, the regulation, and the example specify the effects of "solely" on additional remuneration paid to crew members, the effect of "solely" on other factors, including subtraction of operating expenses, is properly excluded.

The stipulation of facts, including the schedules computing the proceeds earned by petitioner and the other crew members from each of the voyages of the Elizabeth R., indicates that the crew members' share was charged for operating expenses at three different levels.  For every voyage, the proceeds subject to allocation between the crew members and the fishing boat owner and captain were reduced by two or three of fuel, ice, and lubricating oil.  For every voyage, the crew members' 50-percent share was reduced by one or more of payments to lumpers and for food, and on one occasion for "miscellaneous".  For four voyages, petitioner's individual crew member's share was charged for "clothing", and for one voyage, he was charged for unspecified "supplies".

In our view, each of these types of charges, at whatever level incurred and subtracted, does not change the character of the share of proceeds that petitioner received as depending "solely" on the amount of the boat's catch of fish within the meaning of section 3121(b)(20) and section 31.3121(b)(20)-1(a)(2), Employment Tax Regs.  Notwithstanding that none of these

expenses depend on the amount of the catch, the share of proceeds of the catch that remains after subtraction of these expenses consists solely of proceeds of the catch. The subtraction of operating expenses does not constitute additional or fixed compensation. The crew members' share in the profits from each catch does not depend partially or fully on any factor other than the amount of the catch within the meaning of the statute and the regulation.

The Senate Committee on Finance stated that the catch is sold upon return to shore and each crewman is "immediately" paid a percentage of the proceeds from the catch. Petitioners argue that Congress, in using the word "immediately", intended that the fishing boat workers receive their share of the proceeds immediately after the sale of the catch without delay for subtraction of operating expenses. We disagree with petitioners' argument. The word "immediately" does not preclude a quick computation to subtract the amount of previously incurred operating expenses.

   c.   Rev. Rul. 77-102 and Section 31.3121(b)(20)-1,
        Employment Tax Regs.

In Rev. Rul. 77-102, 1977-1 C.B. 299, the Commissioner ruled that crew members were self-employed even though they received a share of the proceeds after subtraction of operating expenses. Petitioners argue we should give little weight to Rev. Rul. 77-102, supra, because the Secretary superseded or revoked it by

failing to mention subtraction of operating expenses in promulgating section 31.3121(b)(20)-1, Employment Tax Regs., thereby making Rev. Rul. 77-102, supra, inconsistent with the regulation.

Even though revenue rulings do not have the force of law and are merely statements of the Commissioner's litigating and administrative position, Dixon v. United States, 381 U.S. 68, 73 (1965), such rulings constitute a body of experience and informed judgment to which courts may properly resort for guidance in the interpretation of revenue statutes and regulations, Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); Esden v. Bank of Boston, 229 F.3d 154, 169 n.19 (2d Cir. 2000); Gordon v. Commissioner, 88 T.C. 630, 636 n.3 (1987).

As it pertains to the subtraction of operating expenses, Rev. Rul. 77-102, supra, has been relied upon and followed by the industry for more than 27 years without any substantial change. During the last 27 years, neither Congress nor the Secretary took advantage of the opportunity to invalidate Rev. Rul. 77-102, supra. There has been no announcement that the revenue ruling has fallen into desuetude or has been revoked, modified, or invalidated by section 3121(b)(20), section 31.3121(b)(20)-1, Employment Tax Regs., or a new revenue ruling. See Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 184 (1957); cf. Rauenhorst v. Commissioner, 119 T.C. 157, 170 (2002). Indeed, the

Commissioner continued to rely on Rev. Rul. 77-102, supra, in issuing Tech. Adv. Mem. 2002-11-005 (Mar. 15, 2002) relating to facts substantially identical to those of this case.  See, e.g., Rauenhorst v. Commissioner, supra at 170.  The fact that the regulation was promulgated after the revenue ruling suggests the Commissioner intended that section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., be consistent with Rev. Rul. 77-102, supra. See Natl. Muffler Dealers Association v. United States, 440 U.S. at 477; Peninsula Steel Prod. & Equip. Co. v. Commissioner, 78 T.C. 1029 (1982).

As it pertains to the subtraction of operating expenses, we find Rev. Rul. 77-102, supra, is a reasonable interpretation of the terms "depends" and "proceeds" in the statute and the regulation.  We find no significance in the failure of section 31.3121(b)(20)-1, Employment Tax Regs., to mention the subtraction of operating expenses.

   d.  Section 3121(b)(20)(A) and the Canon "Expressio Unius
       Est Exclusio Alterius"

Under section 3121(b)(20)(A), crew members are not employees if they receive cash payments that do not exceed $100 per trip, are contingent on a minimum catch, and are paid solely for additional duties (e.g., as mate, engineer, or cook) for which additional cash remuneration is traditional in the industry.

Under the canon of construction "expressio unius est exclusio alterius", if a statute specifies certain exceptions to

a general rule, an intention to exclude any further exceptions may be inferred. See Catterall v. Commissioner, 68 T.C. 413, 421 (1977), affd. sub nom. Vorbleski v. Commissioner, 589 F.2d 123 (3d Cir. 1978); see also Black's Law Dictionary 581 (6th Ed. 1990) ("if [sic] statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded"). Petitioners argue that allowing for subtraction of operating expenses would constitute an exception to section 3121(b)(20) that Congress specifically precluded by enacting the $100 cash payment exception of section 3121(b)(20)(A).

The canon "expressio unius est exclusio alterius" does not apply to every statutory listing or grouping; the canon applies only when the statute identifies "a series of two or more terms or things that should be understood to go hand in hand," thus raising the inference that a similar unlisted term was deliberately excluded. Chevron U.S.A., Inc. v. Echazabal, 536 U.S. 73, 81 (2002); United States v. City of New York, 359 F.3d 83, 98 (2d Cir. 2004). The canon can never override clear and contrary evidences of congressional intent. Neuberger v. Commissioner, 311 U.S. 83, 88 (1940).

In enacting section 3121(b)(20)(A), Congress was focused on "additional cash remuneration" that is "traditional in the industry" and is "contingent on a minimum catch" but does not

necessarily depend on the amount of the catch. See sec.
3121(b)(20(A) (emphasis added); SBJPA sec. 1116, 110 Stat. 1452,
1762, 1996-3 C.B. 1, 931; S. Rept. 104-281, at 10 (1996).
Congress added section 3121(b)(20)(A) to conform to the reality
of longstanding fishing industry practices that allowed pers to
be paid to the mate, the cook, and the engineer. See S. Rept.
104-281, supra at 10 (stating that the $100 exception would
recognize longstanding industry practice).

The issue of statutory interpretation presented is not
whether to create another exception analogous to section
3121(b)(20)(A), but to interpret the original text of section
3121(b)(20) to determine whether subtraction of operating
expenses from the proceeds of the catch prevents an individual's
share of the proceeds from depending on the amount of the catch.

The operating expenses are fixed expenses subtracted from
the proceeds of the catch, whereas the $100 payment exception
applies to additional remuneration. The $100 cash payment
exception and the subtraction of operating expenses are so
unrelated and dissimilar that there is no inference or
implication that Congress intended, by injecting the $100 payment
exception for pers under section 3121(b)(20)(A), to exclude the
reduction of proceeds by operating expenses that was embedded in
the statute as originally enacted. See Chevron U.S.A., Inc., v.

<u>Echazabal</u>, <u>supra</u> at 81; <u>United States v. City of New York</u>, <u>supra</u>
at 98.

3.  <u>Application of Section 3121(b)(20) in Light of Our</u>
    <u>Interpretation of the Statute and the Regulation</u>

We hold petitioner was self-employed under section
3121(b)(20) when he worked as a captain or crew member of the
fishing boats in 1997.

Petitioner was self-employed in his capacity as a crew
member because as a crew member he received a share of 50 percent
of the proceeds from the catch.  Petitioner was self-employed in
his capacity as captain because he received a crew member's share
and a percentage of the 50-percent of proceeds allocated to the
boat owner and captain.

Even though petitioner was self-employed in 1997,
petitioners failed to report or pay self-employment tax for
petitioner's fishing activities as required by section 1401.

In the statutory notice, respondent correctly reclassified
$2,031 (40 percent of $5,077) of petitioners' claimed health
insurance premiums as business expenses reportable on Schedule C,
see sec. 162(l), and all $4,438 of petitioners' unreimbursed
employee business expenses as business expenses reportable on
Schedule C, see sec. 162(a).

We hold petitioners are liable under section 1401 for the
self-employment tax liability in the amount determined by

respondent in the statutory notice, which properly takes into account respondent's adjustments.

4. Petitioners' Other Arguments

    a. Section 6050A

Section 6050A(a) provides, in pertinent part, that the operator of a boat on which one or more individuals perform services described in section 3121(b)(20) is required to submit to the Secretary information regarding the identity of each fishing boat worker if the worker receives a share of the proceeds of the catch of fish, the amount so received, and any cash remuneration described in section 3121(b)(20)(A).

Petitioners argue that the Forms 1099-MISC do not require boat owners to report the percentage of each fishing boat worker's share of the proceeds, thereby preventing the boat owners from satisfying the requirements of section 6050A. Petitioners misread section 6050A. Although section 6050A(a)(2) does require fishing boat owners to report the percentage of the catch of fish if the worker receives a share of the actual fish, all that section 6050A(a)(4) requires, if the fishing boat worker receives a share of the proceeds from the catch, is that the fishing boat owner report the amount of cash proceeds received by the worker, not the percentage of the proceeds after sale of the catch. There is no provision under section 6050A that precludes

the fishing boat owner from subtracting operating expenses before distributing the shares of proceeds.

b.  Our Prior Opinion in Anderson v. Commissioner

Petitioners were the petitioners in Anderson v. Commissioner, T.C. Memo. 2003-112, a case that concerned the collection of petitioners' outstanding self-employment tax liability for 1995 and income tax liabilities for 1996 through 1997 under section 6330.  The Court found the Appeals officer at the section 6330 hearing did not abuse his discretion in refusing to consider petitioners' attempt to contest the underlying merits of their 1995 self-employment tax liability.  The Court rejected their argument that they were not liable for 1996 and 1997 income tax because the fishing boat owners failed to withhold the tax. The Court noted that section 3121(b)(20) does not obviate their obligation to pay income tax.

In their answering brief, petitioners argue that Anderson "repudiates the requirements of section 6330" and "disavows the statutory scheme for the collection of employee taxes" because the Court did not find abuse of discretion in the Commissioner's refusal to consider the merits of their 1995 self-employment tax liability.

Petitioners' argument is confusing and unpersuasive. Suffice it to say:  the proper forum for review of our decision in Anderson was the Court of Appeals;  petitioners' 1995 tax year

is not properly before the Court in this case; petitioners'
argument is not relevant to determine petitioner's self-
employment status at issue in this case because petitioners did
not file this case under section 6330 and respondent has not yet
sought to collect petitioners' 1997 self-employment tax
liability.  We observe in conclusion, however, that nothing we
say or do in the case at hand has any negative impact on the
ultimate collectibility of the deficiency resulting from our
determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.