T.C. Memo. 2010-1

UNITED STATES TAX COURT

JAMES E. ANDERSON AND CHERYL J. LATOS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CHERYL J. LATOS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20460-03, 13006-05.  Filed January 4, 2010.

James E. Anderson and Cheryl J. Latos, pro sese.

Frank W. Louis, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  The issue in these cases involves the
employment classification of a crew member of a fishing boat with
fewer than 10 members pursuant to section 3121(b)(20).[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code.

Respondent determined income tax deficiencies and section 6662(a) accuracy-related penalties against James E. Anderson (Mr. Anderson) and Cheryl Latos (petitioner) as follows:

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-------------------|
| 1999 | $15,564 | -0- |
| 2000 | 16,511 | -0- |
| 2001 | 14,791 | $1,463 |
| 2002 | 12,839 | 1,169 |

The issues for decision are:

(1)  Whether Mr. Anderson was self-employed on a fishing boat under section 3121(b)(20) during 1999, 2000, 2001, and 2002. We hold that he was; and

(2)  whether petitioner is liable for section 6662 accuracy-related penalties for 2001 and 2002.[2]  We hold that she is not.

The Court granted respondent's motion to dismiss for lack of prosecution as to Mr. Anderson in docket No. 20460-03, which involves 1999 and 2000, and granted respondent's motion to dismiss for lack of jurisdiction as to Mr. Anderson in docket No. 13006-05, which involves 2001 and 2002.

FINDINGS OF FACT

Petitioners resided in Rhode Island at the time they filed their petition in docket No. 20460-03.  Petitioner resided in

_____

[2]The petition in docket No. 20460-03 does not contest respondent's determination regarding unreported short-term capital gain of $510 for 2000.  The notices of deficiency allowed unclaimed child tax credits for 1999, 2000, and 2001.  Other adjustments in the notices of deficiency are computational.

Rhode Island at the time she filed her petition in docket No. 13006-05. Mr. Anderson and petitioner were married during the years at issue and filed joint tax returns for those years.

From 1997 through 2004 Mr. Anderson worked as a crew member or as the captain of the fishing boat Elizabeth R. When Mr. Anderson worked on the boat, it had crews of fewer than five people. Mr. Anderson received a portion of the proceeds from the sale of the boat's catch as compensation for his services for each voyage. The proceeds from the boat's catch on a voyage were divided as follows: (1) The boat's expenses for fuel, ice, and lubricating oil were subtracted from the gross proceeds from the sale of the catch to determine the net proceeds from the voyage; (2) the crew members, including the captain, were allocated 50 percent of the net proceeds (the crew members' share); (3) the boat owner and the captain were allocated 50 percent of the net proceeds (the boat share); (4) the crew members' share was allocated among the crew members, including the captain, after subtracting the crew's expenses for food, payments to "lumpers" (laborers employed to help unload the catch), and other miscellaneous items. In addition, in 2002, before the proceeds were allocated between the crew members' and the boat shares, 1 percent of the gross proceeds from the sale of the catch was paid to three trade associations that performed lobbying services for the fishing industry. When Mr. Anderson worked as the captain of

the Elizabeth R., he received a percentage of both the crew members' share and the boat share.

During 1999, 2001, and 2002 Mr. Anderson made and/or oversaw repairs to the Elizabeth R., including rebuilding the engine and replacing the engine, for which he received compensation of $5,000, $2,000, and $6,000, respectively. These repairs were made between voyages of the Elizabeth R. Rowell Fishing paid Mr. Anderson for his repair services as follows:

| Date | Amount |
|------|--------|
| June 4, 1999 | $1,000 |
| June 11, 1999 | 1,000 |
| June 18, 1999 | 1,000 |
| Sept. 3, 1999 | 2,000 |
| Feb. 5, 2001 | 1,000 |
| Feb. 10, 2001 | 1,000 |
| Aug. 13, 2002 | 1,200 |
| Aug. 21, 2002 | 1,200 |
| Aug. 28, 2002 | 1,200 |
| Sept. 4, 2002 | 1,200 |
| Sept. 9, 2002 | 1,200 |

Before the years at issue the boat's owner would perform the repairs. Following the boat owner's death in May 1998 the boat's ownership passed to his wife Elizabeth Rowell, who owned the boat through Rowell Fishing Industries, Inc. (Rowell Fishing). After Ms. Rowell's husband's death, Mr. Anderson offered to make and/or oversee repairs to the Elizabeth R. and suggested an amount that he would accept as compensation. Because Ms. Rowell determined that the amount Mr. Anderson suggested was about half the hourly rate she would have to pay anyone else for the repairs, she

agreed that Mr. Anderson would make the repairs. During his conversation with Ms. Rowell about the repairs Mr. Anderson indicated that he would terminate his relationship with the Elizabeth R. and join the crew of another boat if not hired to perform the repairs. Mr. Anderson's services with respect to the repairs were unrelated to his fishing activities as a crew member or the captain of the Elizabeth R., and he was not paid from the division of the catch proceeds.

Mr. Anderson did not receive any other payments for his fishing activities during the years at issue. For each year at issue Rowell Fishing issued to Mr. Anderson a Form 1099-MISC, Miscellaneous Income, reflecting "fishing boat proceeds" that Mr. Anderson received for his work with respect to the Elizabeth R. as follows:

| Year | Income |
|------|--------|
| 1999 | $77,477 |
| 2000 | 76,595 |
| 2001 | 69,742 |
| 2002 | 62,200 |

The above amounts for 1999, 2001, and 2002 included the compensation that Mr. Anderson received for the repair services he performed for the Elizabeth R. in addition to his portion of the crew members' and the boat shares from his fishing voyages.

Mr. Anderson and petitioner reported the amounts shown on the Forms 1099-MISC on their joint Federal income tax returns for the years at issue as other income "Commercial Fishing Not

Reported on W-2".[3]  The returns did not report any self-employment tax due for any year at issue.

## OPINION

Section 1401(a) imposes a tax on the net earnings from self-employment derived from any trade or business carried on by the taxpayer.  Sec. 1402(a) and (b); sec. 1.1401-1(a), Income Tax Regs.  The term "trade or business" when used in reference to self-employment income includes services of crew members of a fishing boat described in section 3121(b)(20).  Sec. 1402(c)(2)(F).

Pursuant to section 3121(b)(20), crew members of a fishing boat with fewer than 10 crew members are excepted from employment status and are classified as self-employed for purposes of the Self-Employment Contributions Act of 1954 where the crew members receive a share of the boat's catch or of the proceeds from the sale of the catch as compensation for their fishing activities.  Sec. 3121(b)(20)(B).  The amount of a crew member's share must depend on the amount of the boat's catch.  Sec. 3121(b)(20)(C).  Section 3121(b)(20)(A) provides a limited exception for cash payments not dependent on the size of the catch that (1) do not exceed $100 per trip, (2) are contingent on a minimum catch, and (3) are paid solely for additional duties (e.g., as mate,

---

[3]Mr. Anderson and petitioner's tax returns for 2000 and 2002 report the amounts as $76,596 and $62,201, respectively.

engineer, or cook) for which additional cash remuneration is traditional in the fishing industry. Section 31.3121(b)(20)-1(a)(1)(ii), Employment Tax Regs., classifies a crew member as self-employed where the amount of the crew member's share "depends solely" on the amount of the boat's catch. This Court has previously held that the crew members' share depends on the amount of the boat's catch as required for self-employment status under section 3121(b)(20) where the fishing boat's operating expenses for a voyage are subtracted from the proceeds of the catch before the crew members' share is determined. Anderson v. Commissioner, 123 T.C. 219, 240 (2004) (Anderson I), affd. 137 Fed. Appx. 373 (1st Cir. 2005). We held that the "depends solely" language of the regulation does not preclude the subtraction of operating expenses when determining the crew members' share. Id. at 238-239.

Anderson I involved the same taxpayers as the present case for tax year 1997. We held that Mr. Anderson was self-employed under section 3121(b)(20) for 1997. To the extent that petitioner asks the Court to reconsider its holding in Anderson I, we find no error in our earlier holding. Petitioner contends that in Anderson I the Court misinterpreted a boat operator's reporting requirements under section 6050A with respect to amounts paid to crew members described in section 3121(b)(20). Petitioner argues that section 6050A precludes the subtraction of

operating expenses before determining the crew members' share. Section 6050A requires boat operators to submit to the Secretary information returns with respect to compensation paid to crew members described in section 3121(b)(20). In Anderson I, the Court interpreted section 6050A(a)(2) as requiring boat operators to report each crew member's percentage share of the catch only where the crew member receives a share of the actual catch. Anderson v. Commissioner, supra at 244; see sec. 6050A(a)(2). Conversely, where the crew members receive a share of the proceeds from the sale of the catch, the boat operator must report only the amount of the proceeds that each crew member receives and not the crew members' percentage allocation of the proceeds. Anderson v. Commissioner, supra at 244. Petitioner argues that section 6050A requires boat operators to report the applicable percentages for crew members who receive either a share of the catch or a share of the proceeds. Section 6050A has no bearing on whether section 3121(b)(20) allows for the subtraction of operating expenses from the sale proceeds before determining the crew members' share. See Anderson v. Commissioner, supra at 244. Accordingly, there is no need to reexamine the reporting requirements of section 6050A.

Petitioner argues that Mr. Anderson's compensation for the years at issue differed from the compensation in Anderson I in two material ways: (1) Mr. Anderson's receipt of compensation

for repair services in 1999, 2001, and 2002, and (2) the payment of 1 percent of the gross proceeds from the sale of the catch to trade associations in 2002 before determining the crew members' share.  For 2000 Mr. Anderson did not receive any compensation from Rowell Fishing in addition to his share of the proceeds from the catch, which was determined in the same manner as his compensation in Anderson I.  Accordingly, we hold under the doctrine of issue preclusion that petitioner may not relitigate Mr. Anderson's self-employment classification for 2000.  See Anderson v. Genuine Parts Co., 128 F.3d 1267, 1272-1273 (8th Cir. 1997).

A.   Compensation for Repair Services

Petitioner argues that Mr. Anderson was not self-employed for 1999, 2001, and 2002 because he received additional compensation in excess of $100 for repair services with respect to the Elizabeth R.  Petitioner argues that because of Mr. Anderson's receipt of this additional compensation, none of his compensation from Rowell Fishing is self-employment income, including his share of the proceeds from the catch.

A crew member's compensation does not depend solely on the amount of the boat's catch if the crew member has an agreement with the boat owner that his remuneration is determined partially or fully by a factor not dependent on the size of the catch. Sec. 31.3121(b)(20)-1(a)(2), Employment Tax Regs.  The regulation

provides the following example of cash payments not dependent on the amount of the catch:

> For example, if a boat is operated under a remuneration arrangement, e.g., a collective agreement which specifies that crew members, in addition to receiving a share of the catch, are entitled to an hourly wage for repairing nets, regardless of whether this wage is actually paid, then all the crew members covered by the arrangement are entitled to receive cash remuneration other than a share of the catch and their services are not excepted from employment by section 3121(b)(20). [Id.]

Where a crew member is entitled to receive any compensation with respect to a voyage that does not depend on the size of the catch, the crew member is treated as an employee with respect to the entire amount of compensation paid (including the portion based on the amount of the catch) for that voyage. Id.; see Rev. Rul. 77-102, 1977-1 C.B. 299. A crew member may be classified as self-employed under section 3121(b)(20) for one voyage and classified as an employee for another voyage on the same boat during the same taxable year. Sec. 31.3121(b)(20)-1(a)(4), Employment Tax Regs.

Mr. Anderson received repair compensation over short periods of 1 day to no more than 2 months during the years at issue. Accordingly, if petitioner's argument that Mr. Anderson received the repair compensation as an employee is correct, it is likely that receipt of the repair compensation would not affect Mr. Anderson's self-employment status with respect to most of his fishing trips during the years at issue. However, there is no

information in the record to associate the repair compensation with particular voyages.  Petitioner does not argue that if we find Mr. Anderson to be self-employed with regard to his voyages as a crew member, he is nonetheless not liable for self-employment tax on the additional repair remuneration because of a separate employment contract with the Elizabeth R.'s owner.

Respondent argues that section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., does not apply to Mr. Anderson's compensation because Rowell Fishing did not have an agreement with Mr. Anderson with respect to the repair services. Respondent asserts no agreement existed because Mr. Anderson initiated his performance of the repairs and he did so voluntarily.  Respondent also contends that Mr. Anderson did not receive the compensation for the repairs in his capacity as a crew member or as the captain of the Elizabeth R., and thus section 3121(b)(20) does not apply to the repair compensation. Rather, respondent argues that the compensation Mr. Anderson received for the repair services was self-employment income under the common law definition of employee versus independent contractor.

The operating crew of a boat includes "all persons on the boat (including the captain) who receive any form of remuneration in exchange for services rendered while on a boat engaged in catching fish."  Sec. 31.3121(b)(20)-1(a)(3), Employment Tax

Regs. The boat owner testified that the repair services were unrelated to Mr. Anderson's fishing activities as a crew member or as the captain of the Elizabeth R. Petitioner did not produce any contrary evidence.

Mr. Anderson's activities repairing and maintaining the boat between voyages were not related to his activities as a crewman. Mr. Anderson was engaged in two separate self-employment activities: (1) As a crewman whose remuneration was based on the size of the catch; and (2) as a mechanic providing repair services to the boat's owner.

We find the boat owner's testimony that the repair services were unrelated to Mr. Anderson's fishing activities credible. Mr. Anderson is not party to an agreement contemplated in section 31.3121(b)(20)-1(a)(2), Employment Tax Regs. Mr. Anderson provided repair services to the boat's owner, but these repair services were not part of one overall employment agreement. Section 31.3121(b)(20)-1(a)(2), Employment Tax Regs., covers agreements imposing maintenance requirements on the crew. Here, the services performed were not obligations of the crew; if Mr. Anderson had not done the repair work at issue, the boat's owner would have hired an unrelated third party to do the work. It was only because Mr. Anderson offered to do the work and offered to do the work at a lower cost than a third party would have that the Elizabeth R.'s owner selected him.

B.    Payment to Trade Associations

Petitioner argues that Mr. Anderson was not self-employed in 2002 because his pay did not depend solely on the size of the catch.  Petitioner contends that Mr. Anderson's pay did not depend solely on the size of the catch because the payments to the trade associations in 2002 are not the type of expense that may be subtracted from gross proceeds before determining the crew members' share.  In Anderson I, the Court addressed expenses for fuel, ice, and lubricating oil subtracted before determining the crew members' and the boat share and expenses for lumpers, food, clothing, unidentified miscellaneous items, and unspecified supplies subtracted from the crew members' share.  Petitioner argues that a boat operator cannot require crew members to pay a portion of the proceeds from the catch for lobbying activities.

Respondent equates the payments to the trade associations with the other operating expenses of the boat, e.g., fuel, ice, and lubricating oil, subtracted from gross proceeds from the sale of the catch.  Respondent argues that Anderson I controls the outcome for 2002.

We agree with respondent.  This Court's holding in Anderson I did not set out an exclusive list of expenses that may be subtracted from the gross sale proceeds yet still have compensation depend solely on the proceeds of the catch.  In that case Mr. Anderson argued that subtraction of fuel, ice, and

lubricating oil costs before division of the sale proceeds among the crew members meant that his remuneration did not depend solely on the size of the catch. We rejected that argument and found that a crewman was self-employed even if operating expenses were subtracted from the gross proceeds before the net proceeds were divided amongst the crew. Nothing in that Opinion limited our holding to situations in which only costs of fuel, ice, or lubricating oil were subtracted before disbursement. To the extent petitioner is arguing that Mr. Anderson did not want to pay the lobbying fees and thus they should not be taken into account in determining whether he is liable for self-employment tax, this argument has no bearing on Mr. Anderson's classification as self-employed.

Mr. Anderson's remuneration depended solely on the size of the Elizabeth R.'s catch. In Anderson I we held that the use of the word "solely" in the regulations was to preclude "self-employment status for crew members who receive additional remuneration for services in the form of 'any fee, hourly wage, minimum for services,' or 'other cash or property independent of the size of the catch'." Anderson v. Commissioner, 123 T.C. at 239. Mr. Anderson's remuneration for serving as a crew member on the Elizabeth R. depended solely on the size of the boat's catch, and he did not receive any additional remuneration in the form of

fees, hourly wages, minimums for services, or other cash or property independent of the size of the catch.  Id. at 239.

In conclusion, Mr. Anderson was self-employed in 1999, 2001, and 2002 and is liable for self-employment tax.  Respondent's determinations are sustained.

C.  Accuracy-Related Penalty

We next determine whether petitioner is liable for an accuracy-related penalty.  Section 6662(a) and (b)(2) provides that taxpayers will be liable for a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a substantial understatement of income tax.  Section 6662(d)(1)(A) provides that a substantial understatement of income tax exists if the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000.  Section 7491(c) provides that the Commissioner bears the burden of production respecting an individual's liability for the penalty.  As discussed above, we have upheld respondent's determinations of deficiencies in petitioner's income tax; respondent has thus met his burden of production.

The section 6662 penalty is inapplicable to the extent the taxpayer had reasonable cause for the understatement and acted in good faith.  Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the relevant facts and

circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id. An honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. Remy v. Commissioner, T.C. Memo. 1997-72.

We find that petitioner had reasonable cause and acted in good faith in not reporting the self-employment tax due. Petitioner was reasonable in believing that Mr. Anderson was not self-employed in the light of his performing additional repair services for the Elizabeth R.'s owner. Petitioner's position that the repair compensation was related to fishing income gains additional plausibility from the fact that Mr. Anderson had told Ms. Rowell that he would join another boat crew if he were not chosen to perform the repairs. Petitioner's position is further supported in regard to 2002 because in that year Mr. Anderson was required to pay lobbying fees. This additional subtraction was not considered by this Court in Anderson I. Further, all of Mr. Anderson's compensation as a crewman and for repairs was reported

to him and petitioner on a single Form 1099-MISC.  These factors show that it was reasonable for petitioner to believe that the 1999, 2000, and 2001 tax years were not governed by our Opinion in Anderson I.  We conclude that petitioner has demonstrated reasonable cause for failing to report the self-employment tax due and that she acted in good faith.  Accordingly, petitioner is not liable for the accuracy-related penalty for either year.

To reflect the foregoing,

Decisions will be entered for respondent as to the deficiencies and for petitioner as to the accuracy-related penalties.