Foley, J., concurring in part[1] and dissenting in part: Preoccupied with establishing whether gender identification disorder (gid) is a disease, respondent and the majority fail to correctly explicate and apply the statute. In allowing deductions relating to petitioner’s expenses, the majority has performed, on congressional intent, interpretive surgery even more extensive than the surgical procedures at issue — and respondent has dutifully assisted. This judicial transformation of section 213(d)(9) is more than cosmetic. I. The Majority Does Not Adhere to the Plain Language of Section 213(d)(9) Section 213(d) provides in part: (9) Cosmetic surgery — (A) In GENERAL. — The term “medical care” does not include cosmetic surgery or other similar procedures, unless the surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a congenital abnormality, a personal injury resulting from an accident or trauma, or disfiguring disease. (B) Cosmetic surgery defined. — For purposes of this paragraph, the term “cosmetic surgery” means any procedure which is directed at improving the patient’s appearance and does not meaningfully promote the proper function of the body or prevent or treat illness or disease. [Emphasis added.] The majority states that section 213(d)(9)(B) “excludes from the definition any procedure” (emphasis added) that promotes bodily function or treats a disease. See majority op. p. 52. The statutory definition, however, prescribes what is included, not excluded, from the definition of cosmetic surgery. The statute sets forth a two-part test: a procedure is cosmetic surgery if it (1) is directed at improving appearance and (2) does not meaningfully promote proper bodily function or[2] prevent or treat illness or disease. Part two of the test is disjunctive, not conjunctive. A procedure “directed at improving the patient’s appearance” is cosmetic surgery if it either does not “meaningfully promote the proper function of the body” or does not “prevent or treat illness or disease.” Thus, if petitioner’s procedures are “directed at improving * * * appearance” and “[do] not meaningfully promote the proper function of the body”, they are cosmetic surgery without regard to whether they treat a disease. The majority does not address either of these prongs but, instead, asserts that these prongs are irrelevant if the procedures treat a disease. See majority op. note 30. The majority’s analysis proceeds as if the statute employs “and” rather than “or” between the “meaningfully promote the proper function of the body” and “prevent or treat illness or disease” prongs. Respondent appears to agree with this interpretation in lieu of a plain reading of the statute. In essence, the majority and respondent engage in reconstruction, rather than strict construction, of section 213(d)(9). According to their interpretation, a procedure will be treated as cosmetic surgery only if it meets all three prongs (i.e., it is directed at improving appearance, does not promote proper bodily function, and does not prevent or treat illness or disease). Simply put, the fact that a procedure treats a disease is not sufficient to exclude the procedure from the definition of “cosmetic surgery”. Indeed, to adopt the majority’s reasoning and its accompanying conclusion the Court must ignore that Congress in section 213(d)(9)(A) specifically provides that the term “medical care” will include “cosmetic surgery or other similar procedures” if the “surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a * * * disfiguring disease.” (Emphasis added.) If any procedure that treats a disease (i.e., as the majority broadly interprets that phrase), see majority op. p. 65, is automatically carved out from the definition of cosmetic surgery, then the section 213(d)(9)(A) specific exclusion, relating to procedures that ameliorate a deformity arising from a disfiguring disease, is superfluous. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (stating that it is “‘a cardinal principle of statutory construction’ that ‘a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.’” (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001))). Congress in section 213(d)(9)(A) readily acknowledges that certain procedures which treat disease may be cosmetic and ensures that these procedures will nevertheless be deemed medical care if they ameliorate a deformity. Sex reassignment surgery (SRS) and the accompanying procedures did not make the list. Judge Halpern asserts that this analysis “disregards the rules of grammar and logic” and that De Morgan’s laws dictate the majority’s holding. Halpern op. p. 83. If there is a negation of the conjunction “or”, De Morgan’s laws convert “or” to “and”. Judge Halpern’s mechanical application of De Morgan’s laws is not prudent. Simply put, congressional intent is not subservient to De Morgan’s laws. Courts dealing with statutes that contain the negation of a conjunction have employed interpretive principles to ensure adherence to Congress’ plain language.[3] In short, section 213(d)(9) must be interpreted with cognizance of the fact that this section was enacted by a Congress intent on limiting deductions for procedures directed at improving appearance and that Augustus De Morgan was not a member of the 101st Congress. II. The Legislative History Provides No Support for the Deduction of Petitioner’s Expenses The lack of unanimity among my colleagues may suggest that section 213(d)(9) is ambiguous and thus resort to legislative history may be appropriate. See Anderson v. Commissioner, 123 T.C. 219, 233 (2004), affd. 137 Fed. Appx. 373 (1st Cir. 2005). The sparse legislative history accompanying the enactment of section 213(d)(9) is quite illuminating. There is certainly no indication that Congress sought to preserve a deduction for expenses relating to SRS and the accompanying procedures. To the contrary, the legislative history states that Congress intended to preserve deductions relating to: expenses for procedures that are medically necessary to promote the proper function of the body and only incidentally affect the patient’s appearance or expenses for treatment of a disfiguring condition arising from a congenital abnormality, personal injury or trauma, or disease (such as reconstructive surgery following removal of a malignancy) * * *. [136 Cong. Rec. 30485, 30570 (1990); emphasis added.] Expenses relating to SRS and the accompanying procedures again did not make the list. III. Even If Not Cosmetic Surgery, Petitioner’s Procedures May Be “Similar” to Cosmetic Surgery Section 213(d)(9)(A) provides that “The term ‘medical care’ does not include cosmetic surgery or other similar procedures, unless the surgery or procedure is necessary to ameliorate a deformity arising from, or directly related to, a congenital abnormality, a personal injury resulting from an accident or trauma, or disfiguring disease.” (Emphasis added.) Assuming arguendo that the majority’s analysis of section 213(d)(9)(B) is correct, petitioner must nevertheless establish that SRS and the accompanying procedures are not “similar” to cosmetic surgery. The majority does not expound on this issue but states: by arguing that the hormone therapy was directed at improving petitioner’s appearance and did not treat an illness or disease, respondent concedes that a “similar procedure” as used in sec. 213(d)(9)(A) is delimited by the definition of “cosmetic surgery” in sec. 213(d)(9)(B) — that is, that a “similar procedure” is excluded from the definition of “medical care” if it “is directed at improving the patient’s appearance and does not meaningfully promote the proper function of the body or prevent or treat illness or disease”. [Majority op. note 31; emphasis added.] This analysis of the statute is simply wrong. The term “similar procedures” is not “delimited by the definition of ‘cosmetic surgery’ in sec[tion] 213(d)(9)(B)”. While it is arguable that it could be defined in this manner, that is not what the statute provides. “Cosmetic surgery” is defined in section 213(d)(9)(B), but there is no statutory or regulatory guidance regarding what constitutes “similar procedures”. Respondent, who has the authority to promulgate guidance defining “similar procedures” and has broad latitude regarding his litigation position, inexplicably conceded this issue with respect to the hormone therapy treatment and apparently failed to make this contention with respect to the SRS. Section 213(d)(9)(B) provides a potentially broad disallowance of expenses relating to procedures intended to improve a taxpayer’s appearance — a disallowance so broad that Congress provided exceptions set forth in section 213(d)(9)(A) to ensure that certain procedures which address deformities were deemed medical care. The parties have stipulated that petitioner’s procedures did not ameliorate a deformity. Even if SRS and the accompanying procedures fail to meet the definition of “cosmetic surgery”, it is arguable that these procedures are “similar” to cosmetic surgery, not “medical care”, and thus not deductible. IV. Congressional Activity, Rather Than Respondent’s Litigation Laxity, Should Determine Deductibility Apparently respondent, but not Congress, readily concedes that a procedure (i.e., directed at improving appearance but not meaningfully promoting proper bodily function) is excluded from the definition of cosmetic surgery if it treats a disease. In addition, respondent, but not Congress, appears to concede that if petitioner’s procedures fail to meet the definition of cosmetic surgery, these procedures also fail to qualify as “similar procedures”. See majority op. note 31. In short, respondent fails to adhere to the plain meaning of the statute. If respondent is comfortable, however, with his current interpretation of the statute and the accompanying litigating position, I offer a word of advice — “Katy, bar the door!” Wells, Vasquez, Kroupa, and Gustafson, JJ., agree with this concurring in part and dissenting in part opinion. I concur with the majority’s conclusion that petitioner’s breast augmentation surgery is “cosmetic surgery” but disagree with the majority’s reasoning (i.e., conclusion that failure to strictly adhere to the Benjamin standards constitutes failure to “treat” gender identification disorder) and interpretation of the statute. While “use of the conjunctive ‘and’ in a list means that all of the listed requirements must be satisfied * * * use of the disjunctive ‘or’ means that only one of the listed requirements need be satisfied.” Kim, Statutory Interpretation: General Principles and Recent Trends 8 (CRS Report for Congress, updated Aug. 31, 2008). This tension between Congress’ plain language and De Morgan’s laws was evident in the interpretation of a property forfeiture statute which contained the negation of a conjunction (i.e., “without the knowledge or consent”). See 21 U.S.C. sec. 881(a)(7) (1988); United States v. 171—02 Liberty Ave., 710 F. Supp. 46 (E.D.N.Y. 1989); cf. United States v. 141st Street Corporation, 911 F.2d 870 (2d Cir. 1990). Rather than applying De Morgan’s laws and interpreting the statutory language to mean “without the knowledge and without the consent”, the District Court followed legislative intent, adhered to a plain reading, and interpreted the language to mean “without the knowledge or without the consent’. United States v. 171-02 Liberty Ave., supra at 50. The court held: Under normal canons of statutory construction, the court must give effect to Congress’ use of the word “or” by reading the terms “knowledge” and “consent” disjunctively. * * * * * * if Congress had meant to require a showing of lack of knowledge in all cases, as suggested by the Government, it could have done so by replacing “or” with “and.” * * * DM] To apply De Morgan’s laws and ignore the plain language of the statute would have been imprudent because, as one commentator accurately opined, “we have no way of telling whether the drafters of the statute intended that De Morgan’s Rules apply or not”. Solan, The Language of Judges 45, 52 (1993). See generally id. at 45-46, 49-53 (discussing how courts have dealt with statutes containing the negation of “and” and “or”).